[No. B242535. Second Dist., Div. Five. Jan. 17, 2013.]

TOM JONES ENTERPRISES, LTD., et al., Plaintiffs and Appellants, v. COUNTY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Law Offices of Martin F. Goldman and Martin F. Goldman for Plaintiffs and Appellants.

Nelson & Fulton, Henry Patrick Nelson and Rina Mathevosian for Defendant and Respondent.

**OPINION**

**MOSK, J.—**

## INTRODUCTION

Plaintiffs and appellants Tom Jones Enterprises, Ltd., a United Kingdom corporation, and Thomas Woodward, a professional known as Tom Jones,[1] appeal from a judgment in favor of defendant and respondent County of Los Angeles (defendant), following the trial court's granting of defendant's demurrer to the first amended complaint (FAC) without leave to amend and dismissal of the action. Plaintiffs' claim against defendant is for the alleged negligence of a Los Angeles County Sheriff's Department[2] employee for causing the release of funds subject to a writ of execution contrary to the instructions of plaintiffs. We hold that although the FAC was not deficient for failing to identify the employee whose conduct is attributed to defendant, the claim is nevertheless barred by the litigation privilege provided in Civil Code section 47, subdivision (b). We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed the FAC for damages against defendant, and the Sheriff's Department, alleging one cause of action for negligence. Plaintiffs alleged

---

[1] Neither we nor the parties distinguish between plaintiffs in connection with the issues raised on appeal. Throughout this appeal, plaintiffs describe themselves as "plaintiff."

[2] The Los Angeles County Sheriff's Department is referred to as the "Sheriff's Department." It is not specifically named as a party to this appeal. The Sheriff's Department was named as a defendant in the lawsuit, but defendant noted in its demurrer to the FAC complaint that it was "also sued" as the Sheriff's Department.

that in June 2009, in a separate action, they obtained a judgment in their favor and against "Barbara S. Rosen, as Trustee of the Rosen Family Trust, successor in interest to Alexander B. Rosen, Deceased" (judgment debtor) in the sum of $9,203,857.07. The trial court issued a writ of execution in plaintiffs' favor and against the judgment debtor. The writ of execution attached to the FAC described the judgment debtor as, inter alia, "BARBARA S. ROSEN, as Trustee of the Rosen Family Trust, successor-in-inter est [*sic*] to Alexander B. Rosen, deceased."

Plaintiffs alleged that they prepared and delivered to the Sheriff's Department instructions to levy the writ of execution against all moneys, accounts, certificates of deposit, "standing in the name of judgment debtor," at Wells Fargo Bank at a specified location. The written instructions attached to the FAC stated, "YOU ARE HEREBY INSTRUCTED TO EXECUTE THE ACCOMPANYING PROCESS AS FOLLOWS: [¶] . . . [¶] Please levy Writ of Execution against all sums of money, accounts, certificates of deposit [at Wells Fargo Bank at the specified location], standing in the name of the judgment debtor: BARBARA S. ROSEN, SOCIAL SECURITY NO. . . . ."

Plaintiffs alleged that Rosen "forwarded a fax" to plaintiffs' attorney "demanding a retraction of any and all levies made against property 'other than the judgment debtor.' " The "fax" correspondence from Rosen to plaintiffs' counsel attached to the FAC stated, "There is a clear distinction between Barbara S. Rosen, an individual, and, Barbara S. Rosen, Trustee, of the Rosen Family Trust. The judgment names Barbara S. Rosen, Trustee, Rosen Family Trust. [¶] I demand that you immediately contact Wells Fargo Bank and the Los Angeles County Sheriff's Department and withdraw your notice of levy under writ of execution against Barbara S. Rosen." Rosen's correspondence indicated copies were sent to the Sheriff's Department and Wells Fargo Bank.

Plaintiffs alleged that plaintiffs' counsel transmitted to the Sheriff's Department written instructions "directing the Sheriff to, 'Please make arrangements to have any property not in the name of "Barbara S. Rosen, as Trustee of the Rosen Family Trust" released forthwith.' " A copy of these written instructions attached to the FAC stated, "On December 3, 2010, you were directed *to Levy a writ of execution against the property of the judgment debtor,* identified in the writ of execution as Barbara S. Rosen, as trustee to the Rosen family trust. [¶] I have been advised that properties belonging to other than the judgment debtor have been levied upon by Wells Fargo Bank. Please make arrangements to have any property not in the name of 'Barbara S. Rosen, as trustee to the Rosen family trust' released forth with [*sic*]." Plaintiffs alleged that the Sheriff's Department acknowledged receipt of

instructions for a "partial release" of funds by indicating it on the Sheriff Department's " 'Case Summary Report,' " a copy of which was attached to the FAC.

Plaintiffs further alleged that, "On and/or between January 21, 2011, and February 25, 2011, . . . [the] Sheriff's Department, through its employees, Does 1 through 3, negligently and carelessly conducted the performance of their duty by ignoring the express instructions of the partial release and issued instructions to fully release all of the funds taken by the Sheriff's office in connection with the execution garnishment, which included, the sum of $193,350 on deposit, standing in the bank account, in the name of judgment debtor, Barbara S. Rosen, as Trustee of the Rosen Family Trust. As a proximate result of the negligence and carelessness of the defendants . . . , plaintiff[s have] been injured [in the sum of] $198,350.00 . . . [because that sum] was released from levy, and returned to the judgment debtor's account at Wells Fargo Bank and immediately thereafter, was removed from Wells Fargo Bank and placed in an unknown located [*sic*], beyond the execution abilities of the plaintiff[s], thereby preventing plaintiff[s] from recovering upon its outstanding judgment and reaping the benefit from the execution levy for which the plaintiff[s] had paid in exchange for the services to be rendered by the defendants and each of them."

Defendant demurred to the FAC contending that plaintiffs did not state facts sufficient to constitute a cause of action for negligence because plaintiffs failed to allege the existence of a duty owed to plaintiffs and did not identify defendant's employee upon whose conduct defendant's alleged liability was based. Defendant also argued that the litigation privilege set forth in Civil Code section 47, subdivision (b), barred plaintiffs' claim. Defendant requested that the demurrer be sustained without leave to amend.

Plaintiffs, in opposing the demurrer, pointed out that pursuant to Government Code section 820, subdivision (a),[3] "[A] public employee is liable for injury caused by his act or omission to the same extent as a private person," and that pursuant to section 815.2, defendant was vicariously liable for the injuries proximately caused by its employee's act or omission, acting within the scope of his or her employment, if that act or omission would have given rise to a cause of action against that employee. Plaintiffs contended that defendant was liable for its employee's negligence and that the litigation privilege did not apply.

The trial court issued a tentative ruling sustaining defendant's demurrer without leave to amend. The trial court's tentative ruling, which became its

---

[3] All statutory references are to the Government Code, unless otherwise indicated.

final ruling,[4] states, inter alia, "Plaintiffs failed to allege sufficient facts to constitute a cause of action against Defendant. Specifically, Plaintiffs failed to allege *facts* showing Defendant is liable for their damages. Plaintiffs did not identify a statute imposing direct liability on Defendant. Instead, Plaintiffs alleged Defendant is vicariously liable, via Government Code §§ 815.2 and 820, for the . . . Sheriff's Department's employee's act of fully releasing the funds taken by the Sheriff's Office in connection with the execution garnishment, when the express instructions only authorized a partial release of funds. [Citations.] However, the newly added allegations [in the FAC, citing to sections 815.2 and 820,] are insufficient because Plaintiffs failed to identify the allegedly negligent employee in the [FAC]. See *Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1113 [16 Cal.Rptr.3d 521] (noting the doctrine of vicarious liability 'clearly contemplates that the negligent employee whose conduct is sought to be attributed to the employer at least be specifically identified, if not joined as a defendant'). [¶] Based on the forgoing, Defendant's demurrer to the [FAC] is sustained without leave to amend." (Fn. omitted.)

The trial court's ruling also states, "Plaintiffs' claim is also barred by the litigation privilege on the face of the [FAC]. [Citation.] [¶] Judgment enforcement efforts, as an extension of a judicial proceeding and related to a litigation objective, are considered to be within the litigation privilege. *Brown v. Kennard* (2001) 94 Cal.App.4th 40, 49–50 [113 Cal.Rptr.2d 891]. . . . [¶] Plaintiff[s] alleged a Los Angeles County Sheriff Department employee 'negligently and carelessly conducted the performance of' his or her duty 'by ignoring the express instructions of the partial release and issued instructions to fully release all funds taken by the Sheriff's Office in connection with the execution garnishment.' [Citation.] Thus, Plaintiffs' claim against Defendant arises out of privileged conduct (i.e., the act of carrying out the directive of a Writ of Execution)."

The trial court sustained defendant's demurrer to the FAC without leave to amend, dismissed the action with prejudice, and entered judgment in favor of defendant and against plaintiffs. Plaintiffs timely filed a notice of appeal.

---

[4] The tentative ruling is attached to an order of dismissal and judgment. The original record does not include a minute order granting the demurrer, or a transcript of the hearing on the demurrer. Plaintiffs submitted a supplemental brief stating that a hearing on the demurrer did not occur because the parties agreed to submit on the trial court's tentative ruling. Plaintiffs also provided a copy of the trial court's minute order stating that the trial court adopted its tentative ruling as its ruling on the demurrer. We order that the record be augmented to include the trial court's minute order.

## DISCUSSION

### A. Standard of Review

On appeal from a dismissal following the sustaining of a demurrer, we review the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory. We view the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]; *Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 122 [61 Cal.Rptr.3d 221].) Plaintiffs did not seek leave to amend their FAC in the trial court, nor do plaintiffs contend on appeal that they should be entitled to amend it.

### B. Plaintiffs' Failure to Reference the Record

Without requesting that we take any action, defendant contends that plaintiffs' opening brief misstates the facts and fails to cite to the record. To the extent that defendant is implicitly suggesting that plaintiffs waived their statement of facts or that we otherwise dismiss the appeal, we decline any such suggestion in this case.

■ Although California Rules of Court, rule 8.204(a)(1)(C) specifies that a party is to provide citations to the record in its appellate brief, the record here consists only of 42 pages, including the 15-page FAC, inclusive of exhibits, the nine-page demurrer, the six-page opposition, and the three-page tentative ruling. As we determine the legal issue of whether the FAC contains facts sufficient to state a cause of action, we are not hampered in this appeal from plaintiffs' failure to cite to the record.

### C. Failure to Specify Sheriff's Department Employee

To enforce a writ of execution, "The judgment creditor shall give the levying officer instructions in writing." (Code Civ. Proc., § 687.010, subd. (a).) " 'Levying officer' means the sheriff or marshal." (Code Civ. Proc., § 680.260.) The written instructions must include, inter alia, the name of the judgment debtor, and "[i]f the judgment debtor is other than a natural person, the type of legal entity shall be stated." (Code Civ. Proc., § 687.010, subd. (a)(4).) Except to the extent the levying officer has actual knowledge that the information is incorrect, the levying officer "shall act in accordance with the written instructions [provided by the judgment creditor]" (Code Civ. Proc., § 687.010, subd. (b); see *id.*, subd. (c)) and "may rely on any information contained in the written instructions" (Code Civ. Proc., § 687.010, subd. (c)).

"The levying officer shall release property levied upon when the levying officer receives a written direction to release the property from the judgment creditor's attorney of record . . . . The release extinguishes any execution lien or attachment lien in favor of the judgment creditor on the property released." (Code Civ. Proc., § 699.060, subd. (a).)

■ The California Supreme Court has discussed government liability under what is now referred to as the Government Claims Act[5] as follows: "Under the California [Government] Claims Act (Gov. Code, § 810 et seq.), 'a public entity is not liable for injury arising from an act or omission except as provided by statute. (Gov. Code, § 815, subd. (a); [citation].)' [Citation.] Thus, in California, 'all government tort liability must be based on statute [citation].' [Citation.] ' "In the absence of a constitutional requirement, public entities may be held liable only if a statute . . . is found declaring them to be liable." ' [Citation.] [¶] Section 815.2, subdivision (a), is one such statute. It provides: 'A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee . . . .' ■ Through this section, the California [Government] Claims Act expressly makes the doctrine of respondeat superior applicable to public employers. [Citation.] 'A public entity, as the employer, is generally liable for the torts of an employee committed within the scope of employment if the employee is liable. [Citations.]' [Citation.] Under section 820, subdivision (a), '[e]xcept as otherwise provided by statute . . . , a public employee is liable for injury caused by his act or omission to the same extent as a private person.' ■ Thus, 'the general rule is that an employee of a public entity is liable for his torts to the same extent as a private person (§ 820, subd. (a)) and the public entity is vicariously liable for any injury which its employee causes (§ 815.2, subd. (a)) to the same extent as a private employer (§ 815, subd. (b)).' [Citation.]" (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932 [80 Cal.Rptr.2d 811, 968 P.2d 522], fn. omitted; see *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 868 [138 Cal.Rptr.3d 1, 270 P.3d 699].)

Defendant cites *Munoz v. City of Union City, supra,* 120 Cal.App.4th 1077, in support of its contention that the trial court properly sustained its demurrer because "[t]o plead vicarious liability [under section 815.2, subdivision (a)], the plaintiff must specifically identify the employee whose conduct is sought

---

[5] Effective January 1, 2013, section 810 was amended to adopt the short title "Government Claims Act." (See *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 741 [68 Cal.Rptr.3d 295, 171 P.3d 20] [" 'Government Claims Act' is a more appropriate short title than the traditional 'Tort Claims Act.' "].)

to be attributed to the public entity," and plaintiffs here did not do so. We disagree with defendant's position. Plaintiffs did not need to identify the employee in the FAC.

The court in *Munoz v. City of Union City, supra*, 120 Cal.App.4th 1077 stated that "unless the employee is identified, the trier of fact will not be able to determine if the elements needed to assert vicarious liability have been proved. [Citation.] Thus, the doctrine clearly contemplates that the negligent employee whose conduct is sought to be attributed to the employer at least be specifically identified, if not joined as a defendant." (*Id.* at p. 1113.)

■ The California Supreme Court in *C.A. v. William S. Hart Union High School Dist., supra*, 53 Cal.4th 861, recently stated, however, that "The complaint, it is true, does not identify by name or position the [defendant school] District's 'employees, administrators and/or agents' who allegedly failed to 'properly hire, train and supervise [defendant's guidance counselor].' But the District cites no statute or decision requiring a plaintiff to specify *at the pleading stage* which of the defendant's employees committed the negligent acts or omissions for which a public entity is allegedly liable under section 815.2. To survive a demurrer, the complaint need only allege facts sufficient to state a cause of action; each evidentiary fact that might eventually form part of the plaintiff's proof need not be alleged. (See *Golceff v. Sugarman* (1950) 36 Cal.2d 152, 154 [222 P.2d 665] [complaint against employer need not include allegation that negligent act was committed by employee in order for plaintiff to pursue respondeat superior liability].) We cannot say from the face of the complaint that the District had *no* supervisory or administrative personnel whose responsibilities included hiring, training, supervising, disciplining or terminating a guidance counselor. [¶] In this connection, the District cites *Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795 [221 Cal.Rptr. 840, 710 P.2d 907], in which we explained that because public entity liability is statutory in nature, facts material to the existence of such liability must be pleaded with particularity. . . . *Lopez* does not stand for the proposition that a plaintiff must specifically plead, before undertaking discovery, the *identity* of a government employee whose alleged negligence is made the basis for vicarious liability under section 815.2, and we doubt such an impracticable rule would be consistent with the legislative intent in enacting that statute. (See *Perez v. City of Huntington Park* (1992) 7 Cal.App.4th 817, 820–821 [9 Cal.Rptr.2d 258]; Sen. Legis. Com. com., reprinted at 32 West's Ann. Gov. Code (1995 ed.) foll. § 815.2, p. 179 ['Under this section, it will not be necessary in every case to identify the particular employee upon whose act the liability of the public entity is to be predicated.'].)" (*C.A. v. William S. Hart Union High School Dist., supra*, 53 Cal.4th at p. 872, fn. omitted.)

In the footnote omitted in the quote above, the court in *C.A. v. William S. Hart Union High School Dist., supra*, 53 Cal.4th 861, stated, "The court in *Munoz v. City of Union City*[, *supra*,] 120 Cal.App.4th [at page] 1113 . . . , opined that vicarious liability under section 815.2 'clearly contemplates that the negligent employee whose conduct is sought to be attributed to the employer at least be specifically identified, if not joined as a defendant' in order that the trier of fact may 'determine if the elements needed to assert vicarious liability have been proved.' *Munoz*, however, was an appeal from a judgment for the plaintiff after a jury trial (*Munoz*, at p. 1083), not an appeal from dismissal after a demurrer as here. Whatever the merits of the quoted remarks as to a jury trial, they have no application at the pleading stage." (*C.A. v. William S. Hart Union High School Dist., supra*, 53 Cal.4th at p. 872, fn. 5.) Accordingly, the failure in this case to identify the employee was not a fatal pleading defect.

### D. *Litigation Privilege*

Section 815, subdivision (b), provides that, "The liability of a public entity . . . is subject to any immunity of the public entity provided by statute . . . and is subject to any defenses that would be available to the public entity if it were a private person." Section 815.2, subdivision (b), provides that, "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

■ Civil Code section 47, subdivision (b), a codification of the litigation privilege, provides that, "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 . . . ." " 'The purposes of section 47, subdivision (b), are to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation. [Citation.] To effectuate these purposes, the litigation privilege is absolute and applies regardless of malice. [Citation.] Moreover, "[i]n furtherance of the public policy purposes it is designed to serve, the privilege prescribed by section 47[, subdivision (b)] has been given broad application." [Citation.]' " (*Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 336 [95 Cal.Rptr.3d 880].)

"Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication, whether or not it

amounts to a publication [citations], and all torts except malicious prosecution. [Citations.] . . . [¶] The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365]; see *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 [63 Cal.Rptr.3d 398, 163 P.3d 89]; *La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 461, 472 [149 Cal.Rptr.3d 716].) "Thus, 'communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege [citation]. It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057 [39 Cal.Rptr.3d 516, 128 P.3d 713] (*Rusheen*); see *Action Apartment Assn., Inc. v. City of Santa Monica, supra,* 41 Cal.4th at p. 1241; *Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 282 [147 Cal.Rptr.3d 88].) "Any doubt as to whether the privilege applies is resolved in favor of applying it. [Citations.]" (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529 [3 Cal.Rptr.2d 49].)

■ Plaintiffs' negligence claim based on the instructions given to the bank by a Sheriff's Department employee is barred by the litigation privilege.
■ Courts have held that the litigation privilege precludes an action against a party who wrongfully levies upon assets in connection with litigation. For example, in *Brown v. Kennard, supra,* 94 Cal.App.4th 40 (*Brown*), the court held that the trial court properly sustained a demurrer without leave to amend on the basis of the litigation privilege set forth in Civil Code section 47, subdivision (b) when the plaintiff alleged that the defendant wrongfully levied on legally exempt assets of a nonparty to an invalid judgment. The court stated, "[The plaintiff] claims that the levy was neither a statement nor a communication within the litigation privilege. Preliminarily, we note that judgment enforcement efforts, as an extension of a judicial proceeding and related to a litigation objective, are considered to be within the litigation privilege. Specifically, [the plaintiff] contends that his abuse of process claim does not rely on the communicative act of *applying for a writ of execution* . . . [The plaintiff] maintains that his abuse of process claim arises from the wrongful levy *effected pursuant to the writ,* including the interference with his property rights and the levy upon exempt property. . . . [The plaintiff] is claiming a 'distinction without a difference.' The act of applying for a writ is privileged. The privilege extends to torts arising from the privileged statement or publication. As such, not only does the privilege protect the application for the writ of execution, it also extends to the act of carrying out the directive of the writ." (*Brown,* at pp. 49–50, fns. omitted; see *Rusheen, supra,* 37 Cal.4th at p. 1065 ["we agree with those cases that have applied the

litigation privilege to limit the availability of the tort of abuse of process in the judgment enforcement context"].)

During oral argument on appeal, plaintiffs conceded that nonparties can invoke the litigation privilege and that the privilege could protect the Sherriff's Department against a claim for a wrongful levy by the person upon whose account was levied. (*Foothill Federal Credit Union v. Superior Court* (2007) 155 Cal.App.4th 632, 636 [66 Cal.Rptr.3d 249] ["litigation privilege 'is not restricted to the actual parties to the lawsuit but need merely be connected or related to the proceedings' "]; *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1540 [52 Cal.Rptr.3d 712] [litigation privilege applies to " ' "litigants or other participants authorized by law" ' "].) Plaintiffs alleged in the FAC that defendant, through its employee, "negligently and carelessly conducted the performance of [its] duty by ignoring the express instructions of the partial release and issued instructions to fully release all of the funds taken . . . in connection with the execution garnishment . . . ." Just as the court in *Brown, supra,* 96 Cal.App.4th 40 deemed a wrongful levy effected pursuant to the writ of execution to be protected by the litigation privilege, a plaintiff's claim for wrongful release of funds taken pursuant to the levy of writ of execution is similarly barred by the litigation privilege.

In *Rusheen, supra,* 37 Cal.4th 1048, the court held that "because the claim for abuse of process was based on the communicative act of filing allegedly false declarations of service to obtain a default judgment, the postjudgment enforcement efforts, including the application for writ of execution and act of levying on property, were protected by the privilege." (*Id.* at p. 1052.) The court stated, "Because the litigation privilege protects only publications and communications, a 'threshold issue in determining the applicability' of the privilege is whether the defendant's conduct was communicative or noncommunicative. [Citation.] The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action. [Citations.] That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature. [Citations.]" (*Id.* at p. 1058; see *Action Apartment Assn., Inc. v. City of Santa Monica, supra,* 41 Cal.4th at pp. 1248–1249.) The court added that if "the gravamen" of the action is based on a communicative act and the litigation privilege applies to it, "the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct, which in this case included acts necessary to enforce the judgment and carry out the directive of the writ [(i.e., the act of levying on the writ)]. [Citations.]" (*Rusheen, supra,* 37 Cal.4th at p. 1065.) The court in *Rusheen* disapproved *Drum v. Bleau, Fox & Associates* (2003) 107 Cal.App.4th 1009, which held at page 1028 [132 Cal.Rptr.2d 602] that " 'wrongfully

levying on property pursuant to a writ of execution is not subject to the litigation privilege.' " (*Rusheen, supra*, 37 Cal.4th at p. 1060.)

The court in *Rusheen, supra*, 37 Cal.4th 1048 concluded that the allegedly perjured declarations of service used to procure the judgment were the gravamen of the action (*id.* at p. 1062) and communicative (*id.* at p. 1058). The court said, "the enforcement of the judgment in reliance on the filing of privileged declarations of service was itself privileged." (*Id.* at p. 1065.) As in that case, here the gravamen of the action—the issuance of written instructions by the Sheriff's Department (presumably to the bank) to fully release the funds—was a communicative act. The litigation privilege even "extends" to what may be considered a noncommunicative act—the act of releasing the funds. (*Id.* at p. 1065.) As stated in *Brown, supra*, 94 Cal.App.4th at page 50, the privilege "extends to the act of carrying out the directive of the writ." The act here ultimately was part of the process of "carrying out the directive of the writ."

That *Rusheen, supra*, 37 Cal.4th 1048, involved a claim for abuse of process and not negligence is not relevant, for the court dealt with the protections of the litigation privilege and not with the nature of the claim. The court also mentioned that in that case there were steps that the plaintiff could take to mitigate the injury (*id.* at p. 1064), steps that may not be available here. But the court did not state that the availability of those procedures was the basis of its holding. The court also noted that "the process itself of enforcing money judgments is subject to judicial supervision." (*Id.* at p. 1065.) That is true here, although to a lesser extent than was available in that case.

Plaintiffs contend that the litigation privilege set forth in Civil Code section 47, subdivision (b) does not apply because defendant's instruction to release all funds occurred "after" the levy on the writ of execution, and was not conducted to achieve the objects of the litigation. But as enforcement efforts in connection with a writ of execution (levying on a bank account and filing an abstract of judgment) are privileged, " 'extension[s] of th[e] judicial process' " likewise are " 'logically and legally related to the realization of a litigation objective—that is, collection of a judgment.' " (*Rusheen, supra*, 37 Cal.4th at p. 1060.) If a wrongful levy effected pursuant to a writ of execution is privileged and related to a litigation purpose (*Brown, supra*, 94 Cal.App.4th at pp. 46–47), the release of the funds obtained as a result of that levy similarly should be viewed as related to a litigation purpose—the proper collection of a judgment—and thus privileged.

This case is to some extent an extension of the principles of the litigation privilege enunciated in *Rusheen, supra*, 37 Cal.4th 1048 and *Brown, supra*, 94

Cal.App.4th 40 in that the erroneous release of the levy did not emanate from alleged wrongful conduct of the levying party. But as the court stated in *Rusheen, supra,* 37 Cal.4th at page 1065, the litigation privilege limits tort liability "in the judgment enforcement context"; and ". . . California courts have given the privilege an expansive reach." (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1193–1194 [17 Cal.Rptr.2d 828, 847 P.2d 1044].) Accordingly, the litigation privilege bars plaintiffs' claim.

## DISPOSITION

The judgment is affirmed. Defendant is awarded its costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 27, 2013, S208780.