Filed 11/30/20  Payne v. County of Los Angeles CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| WHITFIELD DERICK PAYNE, | B299112 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC720423) |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Terry A. Green, Judge.  Affirmed.

Whitfield Derick Payne, in pro. per., for Plaintiff and Appellant.

Nelson & Fulton, Henry Patrick Nelson and Elise H. Hur for Defendant and Respondent County of Los Angeles.

Garrett & Tully, Candie Y. Chang and Charles G. Gomez for Defendant and Respondent B&D Property Investment, LLC.

Haven Law and Peter T. Haven for Defendants and Respondents Hawthorne Business Center, LLC, 3719 Canfield

Avenue, LLC, Evans-Milner, LLC, 3530 Hughes Avenue, LLC, E III Real Estate Investments, Inc. and CA Exchange, LLC.

Kaufman Dolowich Voluck, Andrew J. Waxler and Jennifer E. Newcomb for Defendant and Respondent Joel D. Ruben.

_____

Whitfield Derick Payne appeals from an order granting respondents' motion to strike under Code of Civil Procedure section 426.16, the anti-SLAPP statute.[1] Respondents Hawthorne Business Center, LLC, 3719 Canfield Avenue, Evans-Milner, LLC, 3530 Hughes Avenue, LLC, E III Real Estate Investments, Inc. and CA Exchange, LLC (collectively HBC) obtained a stipulated unlawful detainer judgment against Payne concerning office units that Payne leased from HBC. Respondent Joel D. Ruben was their lawyer.

The judgment required Payne to pay past due rent and holdover damages. On behalf of his clients, Ruben obtained a writ of execution to collect on the judgment. The writ was levied on a rental property that Payne owned on Visalia Avenue in Compton (the Visalia Property). After Payne made several unsuccessful attempts to avoid the sale of that property through bankruptcy filings, respondent B&D Property Investment, LLC (B&D) purchased the property at a sheriff's sale.

---

[1] Subsequent undesignated statutory references are to the Code of Civil Procedure. "SLAPP" is an acronym for "[s]trategic lawsuit against public participation." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109, fn. 1.)

Payne then filed this lawsuit, seeking damages and return of the Visalia Property on various causes of action alleging that the sale of the property was improper.[2]

We affirm. Payne's claims arise from conduct that is protected under section 425.16. Those claims are all based on alleged communicative conduct in connection with litigation or other official government proceedings. And Payne failed to show that he was likely to prevail on his claims. The conduct that Payne challenges was protected by the litigation privilege, and in any event Payne did not provide evidence of any wrongdoing.

## BACKGROUND

### 1. The Unlawful Detainer Action

Payne previously rented two office units in Inglewood from HBC (the Inglewood Property). Payne fell behind in his rent in 2015, and HBC, represented by Ruben, filed an unlawful detainer action (the UD Action) to evict him.

Payne then filed a chapter 13 bankruptcy petition. HBC successfully moved for relief from the bankruptcy stay under title 11 United States Code sections 362(d)(1) and 362(d)(2). Payne's bankruptcy case was subsequently dismissed on January 13, 2016.

The UD Action settled on the day of trial. Payne stipulated to a judgment dated December 16, 2015 (the UD Judgment). The UD Judgment awarded possession of the Inglewood Property to

---

[2] Payne sued HBC and Ruben on various claims relating to alleged fraud, he sued the County of Los Angeles (County) on the ground that it allowed the sheriff's sale to proceed, and he sued B&D for the return of the Visalia Property and for quiet title. We refer to HBC, Ruben, B&D, and the County collectively as Respondents.

3

HBC and required Payne to vacate the property by January 15, 2016.  The UD Judgment also awarded $25,000 to HBC for past due rent and holdover damages.  The UD Judgment contained a standard provision with a checked box indicating that Payne's security deposit "shall be retained by the plaintiff and defendant(s) waive(s) any claim to its return."  A handwritten addition to that paragraph stated that "[t]he $25,000 under ¶ 2 above and the security deposit will be all the damages Plaintiffs are entitled to through January 15, 2016."[3]

Another handwritten addition to the UD Judgment stated that Payne "will amend his Chapter 13 plan in his bankruptcy case, and any payments made under the plan will be credited against the $25,000 under ¶ 2 above."  The UD Judgment was entered the following day, on December 17, 2015.

2.    **Enforcement of the UD Judgment**

In preparation for executing the money judgment, HBC obtained a writ of execution on December 22, 2015, and an abstract of judgment (subsequently amended) on January 15, 2016.  On May 6, 2016, the Los Angeles County Sheriff's Department (Sheriff) levied the writ of execution on the Visalia Property.

---

[3] As discussed further below, Payne claimed that Ruben checked the box forfeiting Payne's security deposit and added the handwritten provision after Payne had already executed the stipulation for the UD Judgment.  Ruben denied this allegation, testifying that he checked the box concerning the security deposit and made all the handwritten additions to the UD Judgment pursuant to the parties' agreement before the stipulation was executed.  Payne did not submit any evidence supporting his allegation.

4

In response to the levy, Payne filed an ex parte application in superior court seeking to vacate the writ. Payne argued that the writ was not authorized by the UD Judgment. Payne claimed that he and HBC "agreed as to the method whereby the judgment would be satisfied, and that was through [Payne's] Bankruptcy Chapter 13 Plan. No alternate method of collection was agreed to, for had that been the case, [Payne] would not have executed the judgment, and would have gone to trial."

The trial court denied Payne's ex parte application. The trial court's ruling was later affirmed in an opinion by the appellate division of the superior court on May 10, 2018. (*Hawthorne Business Center v. Payne* (May 10, 2018, No. BV031883, App. Div. Super. Ct. L.A. County [nonpub. opn.]).)

In July 2016, Payne filed another bankruptcy petition. In May 2017 the bankruptcy court confirmed a chapter 13 plan in that proceeding, which included a payment schedule.

HBC received distributions from Payne's second bankruptcy in the amount of $5,282.90. However, on February 26, 2018, the bankruptcy court granted a motion by the trustee to dismiss the bankruptcy case on the ground that Payne had failed to make payments required under the chapter 13 plan. According to the trustee, at the time the motion was filed in November 2017, Payne was delinquent in payments under the payment plan in the amount of $10,104. The dismissal order stated that "debtor is prohibited from filing any new bankruptcy petition within 180 days of the date of entry of this order."

Following the dismissal, HBC filed a notice in the UD Action stating that the bankruptcy stay had terminated. HBC also filed an "Acknowledgment of [Partial] Satisfaction of

Judgment" reflecting the $5,282.90 that it had received from the bankruptcy proceeding.

HBC then requested that the Sheriff proceed with the sale of the Visalia Property. The Sheriff noticed the sale for April 18, 2018.

On April 3, 2018, Payne filed another ex parte application in superior court seeking an injunction to preclude the sale. The application alleged that Ruben had given false information to the Sheriff concerning the amount due on the UD Judgment. The court denied the application.

Payne then filed a third bankruptcy petition on April 13, 2018. A few days later, prior to the Sheriff's sale, Payne filed a "Defendant's Notice of Chapter 13 Protection" in the UD Action, claiming that the bankruptcy filing stayed all proceedings. Despite that filing, the Sheriff's sale of the Visalia Property proceeded as scheduled on April 18, 2018.

B&D purchased the Visalia Property for $164,000. HBC received $26,284.05 from the sale. The remaining amount was disbursed to Payne.

On May 22, 2018, the bankruptcy court issued an order to show cause re dismissal (OSC), citing Payne's "apparent attempt to use a false social security number and violation of a prohibition against filing any new bankruptcy petition within 180 days pursuant to the dismissal order entered on February 26, 2018." The bankruptcy court dismissed Payne's third bankruptcy case following the hearing on the OSC.

3. **Payne's Complaint**

Payne filed his complaint in this action on September 4, 2018. The complaint alleged that Ruben and HBC altered the UD Judgment in two ways after Payne had executed the

6

stipulation for the judgment. After obtaining Payne's signature, Ruben allegedly checked the box indicating that Payne had agreed to surrender his security deposit, and also added the handwritten language "to falsely indicate that the $25,000 principal and Security Deposit were damages merely for the period of time until January 15, 2016, a date one month thereafter."

The complaint also alleged that Ruben and HBC provided false information to the Sheriff in connection with the sale of the Visalia Property. Ruben allegedly provided lienholder instructions to the Sheriff identifying the judgment amount as $25,000, without crediting Payne's security deposit or the amount that HBC had received from Payne's second bankruptcy. Ruben also allegedly informed the Sheriff that it was appropriate to proceed with the sale despite Payne's third bankruptcy filing on April 13, 2018.

The complaint alleged causes of action for conversion; negligence; quiet title; fraud; interference with prospective economic advantage; unfair business practices; intentional infliction of emotional distress; and "restitution."

## 4.     The Anti-SLAPP Motions

Ruben filed an anti-SLAPP motion. The motion was supported by his own declaration with exhibits explaining the sequence of events concerning the UD Judgment and the steps Ruben took on behalf of HBC to enforce it. HBC, B&D, and the County joined in the motion.

In opposition, Payne submitted a memorandum and his own brief declaration. The declaration did not respond to Ruben's description of the relevant events, but simply asserted

that the UD Judgment did not allow an abstract of judgment or a "Writ of Execution/Money Judgment."

The trial court granted the anti-SLAPP motions. The court ruled that Payne's claims arose from protected petitioning activity under section 425.16, subdivision (e), as they concerned Respondents' "efforts to levy on a stipulated judgment."

The court also found that Payne had failed to meet his burden of demonstrating a probability of success on his claims. The court concluded that Payne "has no probability of prevailing, because enforcing a court judgment is protected by the litigation privilege set forth in Civil Code § 47(b)." The court also found that the "record reveals no wrongdoing" by Respondents.

## DISCUSSION

### 1. The Anti-SLAPP Procedure

Section 425.16 provides for a "special motion to strike" when a plaintiff asserts claims against a person "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) Such claims must be stricken "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (*Ibid*.)

Thus, ruling on an anti-SLAPP motion involves a two-step procedure. First, the "moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).) At this stage, the defendant must make a "threshold showing" that the challenged claims arise from protected activity. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*).)

Second, if the defendant makes such a showing, the "burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral, supra,* 1 Cal.5th at p. 396.) Without resolving evidentiary conflicts, the court determines "whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment." (*Ibid*.) The plaintiff's showing must be based upon admissible evidence. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

Section 425.16, subdivision (e) defines the categories of acts that are in " 'furtherance of a person's right of petition or free speech.' " Those categories include "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," and "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1)–(2).)

An appellate court reviews the grant or denial of an anti-SLAPP motion under the de novo standard. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

## 2. Payne's Claims Arise from Protected Activity

A cause of action that arises from a defendant's litigation activity challenges protected petitioning conduct and is therefore subject to an anti-SLAPP motion. (§ 425.16, subd. (e)(1); *Rusheen, supra,* 37 Cal.4th at p. 1056.) A claim arises from protected litigation conduct if it seeks liability based upon "communicative conduct such as the filing, funding, and

9

prosecution of a civil action.  [Citation.]  This includes qualifying acts committed by attorneys in representing clients in litigation." (*Rusheen*, at p. 1056.)  Thus, "all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding . . . are per se protected as petitioning activity by the anti-SLAPP statute."  (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 480; see *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281 ["The prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section 425.16"].)

Payne's claims primarily challenge the conduct of Ruben and HBC in obtaining and enforcing the UD Judgment against the Visalia Property.  The claims are based on communicative acts by Ruben and HBC.

Payne's complaint alleges that Ruben:  (1) falsely told Payne during settlement discussions that the UD Judgment would be less than $25,000 after accounting for Payne's security deposit and sums that HBC received from Payne's prior bankruptcy proceedings; (2) altered the UD Judgment after Payne had stipulated to it; (3) filed a memorandum of costs and lienholder instructions for the Sheriff's sale that failed to account for sums that should have been deducted from the judgment amount; and (4) falsely told the Sheriff that it was appropriate to proceed with the sale of the Visalia Property despite Payne's initiation of new bankruptcy proceedings shortly before the sale. In opposing Respondents' anti-SLAPP motions, Payne also argued that Ruben committed fraud by failing to disclose in settlement negotiations that he intended to levy a writ of execution against the Visalia Property.  These were all alleged

10

communications related to the UD Action.  Payne's claims therefore arise from protected litigation conduct.

Payne's complaint also alleges that the County is liable for conversion and/or negligence because it improperly proceeded with the Sheriff's sale after learning of Payne's bankruptcy filing. Government entities may invoke the anti-SLAPP statute when they are sued for conduct falling within the protection of the statute.  (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 17–18; *Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, 1003–1004.)  The County's alleged act of proceeding with the sale may not itself have been a "statement or writing" for purposes of section 425.16, subdivisions (e)(1) and (2). However, that act was "necessarily related" to the alleged wrongful communicative acts leading to the sale.  (See *Rusheen, supra,* 37 Cal.4th at p. 1065 [litigation privilege extended to act of enforcing a writ of execution allegedly obtained through fraud]; *Tom Jones Enterprises, Ltd. v. County of Los Angeles* (2013) 212 Cal.App.4th 1283, 1294–1297 (*Tom Jones*) [claim against the County for negligent levy of a writ of execution was barred by the litigation privilege]; *Flatley v. Mauro* (2006) 39 Cal.4th 299, 322–323 (*Flatley*) ["Past decisions of this court and the Court of Appeal have looked to the litigation privilege as an aid in construing the scope of section 425.16, subdivision (e)(1) and (2)"].)

Moreover, Payne's complaint also predicated the County's liability on protected communications.  The complaint alleges that "[t]he Notice of the Sheriff's Sale failed to disclose that the Real Property was an asset of a bankruptcy estate in a pending bankruptcy action.  The Sheriff's Department likewise failed to announce to the members of the public in attendance at the

11

Sheriff's Sale that the Real Property was an asset of a bankruptcy estate."

Finally, Payne did not argue below and does not argue on appeal that his claims against the County arise from unprotected, noncommunicative conduct. He has therefore forfeited the issue. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 ["When an appellant fails to raise a point . . . we treat the point as waived"].)

On appeal, Payne does not dispute that his claims arise from litigation activity by Ruben and HBC. He argues only that Ruben's alleged conduct is not within the scope of the anti-SLAPP statute because Ruben and HBC engaged in fraud and "extortion." In Payne's reply brief, he supports that argument with a citation to our Supreme Court's decision in *Flatley*.

In *Flatley*, the court held that a defendant cannot meet his or her burden to show that the plaintiff's claims arise from protected activity when "either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law." (*Flatley, supra,* 39 Cal.4th at p. 320.) The court emphasized that a plaintiff's mere *allegation* of illegality is not sufficient to preclude a defendant from showing that his or her challenged conduct is protected under section 425.16: "If, however, a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step [of the anti-SLAPP procedure] but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits." (*Flatley*, at p. 316; see also *Birkner v. Lam, supra,* 156 Cal.App.4th at p. 285 [" '[C]onduct that would otherwise come within the scope of the anti-SLAPP statute does not lose its

12

coverage . . . simply because it is *alleged* to have been unlawful or unethical' "], quoting *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 910–911.)

Respondents dispute that they engaged in any unlawful activity. And, in responding to Respondents' anti-SLAPP motions, Payne did not provide *any* evidence of alleged illegal activity, much less evidence that "conclusively establishes" that Respondents engaged in unlawful activity "as a matter of law." (*Flatley, supra,* 39 Cal.4th at p. 320.)

Payne's declaration in opposition to the anti-SLAPP motions did not support any of his allegations of fraud. The declaration simply asserted that "[t]here were no terms" in the stipulated UD Judgment that allowed an abstract of judgment or a writ of execution. That was not evidence of fraud or of any other kind of wrongdoing.[4]

The UD Judgment contained a money judgment in favor of HBC, which HBC was entitled to collect by executing against Payne's assets using the legal mechanisms available to enforce judgments. No express provision in the UD Judgment was necessary to give HBC the right to execute the judgment against real property that Payne owned. (See § 695.010, subd. (a) ["Except as otherwise provided by law, all property of the judgment debtor is subject to enforcement of a money judgment"].)

Moreover, the superior court rejected this same argument. As discussed above, long before the Sheriff's sale Payne moved

---

[4] Nor was it even admissible. The trial court sustained Ruben's objections to this testimony, and Payne does not challenge that ruling on appeal.

13

unsuccessfully to vacate the writ of execution levied on the Visalia Property on the ground that the UD Judgment did not authorize that relief. The appellate division of the superior court affirmed the order denying that motion, rejecting Payne's argument that the UD Judgment "did not allow [HBC] to enforce the judgment by levying on his real property." (*Hawthorne Business Center v. Payne, supra*, No. BV031883.) Payne could not prove that Ruben and HBC engaged in fraudulent litigation conduct by pursuing a remedy that two courts had already ruled was proper.

Payne failed to provide any proof of fraud, much less proof that was conclusive as a matter of law. Respondents therefore met their burden under the first step of the anti-SLAPP procedure.

### 3. Payne Failed to Show a Probability of Success

The trial court correctly ruled that Payne's claims would fail because enforcement of the UD Judgment was protected under the litigation privilege. The litigation privilege established by Civil Code section 47 applies to " 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.' " (*Rusheen, supra,* 37 Cal.4th at p. 1057, quoting *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) The privilege applies to communications in connection with litigation, even if those communications include false claims or perjurious evidence. (*Rusheen*, at p. 1058.) And the privilege applies to the alleged wrongful enforcement of a judgment if the plaintiff's claim of wrongdoing is based upon communicative conduct during the litigation. (*Id.* at pp. 1062–1063.)

14

As discussed above, Payne's claims against Ruben, HBC and B&D are based on alleged fraud in procuring and enforcing the UD Judgment.  The alleged fraud consisted of communicative acts that are protected by the litigation privilege.  Payne's claims against the County are also barred by the litigation privilege, as they are based on alleged negligence that is necessarily related to communicative acts.  (See *Rusheen, supra,* 37 Cal.4th at p. 1065; *Tom Jones, supra,* 212 Cal.App.4th at pp. 1294–1297.)[5]

Payne therefore failed to meet his burden under the second step of the anti-SLAPP procedure, and the trial court correctly granted Respondents' anti-SLAPP motions.

4.      **The Timing of the Hearing on Respondents' Anti-SLAPP Motions Did Not Preclude the Trial Court from Considering Them**

Payne argues that the trial court did not have jurisdiction to consider the Respondents' anti-SLAPP motions because the motions were heard more than 30 days after they were served. Payne relies on section 425.16, subdivision (f), which provides that an anti-SLAPP motion "shall be scheduled by the clerk of the

---

[5] Payne also did not provide any evidence supporting his claim that the County was negligent in proceeding with the sale of the Visalia Property while a bankruptcy proceeding was pending.  Payne did not rebut Respondents' evidence that the bankruptcy proceeding was Payne's third such proceeding, which Payne filed under a different social security number and in violation of the bankruptcy court's prior order prohibiting Payne from filing any other bankruptcy action for 180 days.  As the trial court correctly observed, under title 11 United States Code section 362(b)(21), a bankruptcy petition does not stay enforcement of a lien against real property if the petition was filed in violation of a bankruptcy court order in a prior case.

court for a hearing not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing."

Payne's argument fails for several reasons.  First, Payne did not raise the argument or object to the timing of the hearing in the trial court and he has therefore forfeited the issue.  (*San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 351–352.)

Second, Payne's argument is wrong on the merits.  As this court explained in *Karnazes v. Ares* (2016) 244 Cal.App.4th 344, "a trial court may not properly deny an anti-SLAPP motion on the grounds that the hearing was not scheduled within 30 days after service of the motion.  Instead, section 425.16, subdivision (f) 'requires the court clerk to schedule a special motion to strike for a hearing no more than 30 days after the motion is served if such a hearing date is available on the court's docket, but does not require the moving party to ensure that the hearing is so scheduled and does not justify the denial of a special motion to strike solely because the motion was not scheduled for a hearing within 30 days after the motion was served.' " (*Karnazes*, at p. 352, quoting *Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1349.)

Payne cites his prior experience in filing a motion to "Set Aside [a] Judgment" under section 660.  However, that motion was subject to a different rule.  Unlike the anti-SLAPP statute, section 660 (which governs a motion for a new trial) and section 663a (which governs a motion to set aside a judgment) expressly require that the court's power to rule on the motion expires 75 days after service of notice of the judgment.  Those sections state

16

that, if that time expires, "the effect shall be a denial of the motion without further order of the court." (§ 660, subd. (c); § 663a, subd. (b).)

**5. Payne's Claim of Bias Is Baseless**

Payne argues that the trial judge was biased against him because of his race. Nothing in the record supports that allegation. The trial court made a correct legal ruling based upon a well-supported anti-SLAPP motion. We therefore reject the argument.

**DISPOSITION**

The trial court's order is affirmed. Respondents are entitled to their costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

17
