Filed 1/14/16  A-Ju Tours v. Alleghany Corp. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| A-JU TOURS, INC., et al., | B256956, B259567 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC498813) |
| v. | |
| ALLEGHANY CORPORATION et al., | |
| Defendants and Respondents. | |

APPEALS from judgments and a postjudgment order of the Superior Court of Los Angeles County, Frederick C. Shaller, Judge.  Affirmed.

Rehm & Rogari and Ralph Rogari for Plaintiffs and Appellants A-Ju Tours, Inc., Pyoung Sik Bahk, Trustee of the A-Ju Tours, Inc. Trust Account.

Frandzel Robins Bloom & Csato, Hal D. Goldflam and Brad R. Becker for Defendant and Respondent Hanmi Bank.

Nelson & Fulton, Henry Patrick Nelson and Rina Mathevosian for Defendants and Respondents County of Los Angeles and former Sheriff LeRoy Baca.

———————————

A-Ju Tours, Inc. and Pyoung Sik Bahk, Trustee of the A-Ju Tours, Inc. Trust Account (collectively, the Travel Agency) sued Hanmi Bank (the Bank) for alleged misconduct arising out of a writ of execution issued against the Travel Agency's account at the Bank. Upon receipt of the writ of execution, the Bank froze the full levied-upon amount and notified the Travel Agency of its action. Despite repeated demands by the Travel Agency, the Bank refused to release the funds absent either an agreement between the Travel Agency and its judgment creditor or a court order. In response to the Bank's refusal, the Travel Agency sought to obtain release of the funds through the claim of exemption procedure (Code Civ. Proc., § 703.010 et seq.[1]). The County of Los Angeles, however, refused to serve the exemption claims on the judgment creditor, because the Travel Agency was not a "natural person." (§ 703.020, subd. (a).) In response to these refusals, the Travel Agency sued the Bank and the County and former Sheriff Leroy Baca (collectively, the County), asserting a wide array of claims.

The Bank responded by, among other things, arguing that the Travel Agency's complaint was a "strategic lawsuit against public participation" or SLAPP suit. Specifically, the Bank argued that its allegedly improper communications and communicative conduct taken in response to the writ and resulting court orders were protected activities under the anti-SLAPP statute (§ 425.16) and that the Travel Agency could not prevail on any of its claims against the Bank because its communications and conduct related to the writ were protected by the litigation privilege. The trial court agreed, granting the Bank's motion, entering judgment in its favor and subsequently awarding it its attorney fees.

As for the County, it repeatedly and successfully demurred to the Travel Agency's claims, arguing that the Travel Agency had failed to state a claim against it. Eventually, the trial court sustained the County's demurrer to the Travel Agency's second amended complaint without leave to amend and entered judgment in favor of the County.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

The Travel Agency appeals from both judgments and from the award of attorney fees to the Bank. Pursuant to the parties' stipulation, the appeals were consolidated for the purposes of briefing, oral argument, and decision. We affirm.

## BACKGROUND

### I.     The Travel Agency's Account with the Bank

The Travel Agency sells travel tours and other travel services to customers in the United States. Under the "seller of travel" law (Bus. & Prof. Code., § 17550 et seq.), the Travel Agency is required deposit all funds it receives from its customers into a trust account.

In 2007, the Travel Agency opened a trust account with the Bank. As a condition to opening and maintaining the account, the Travel Agency agreed to certain terms. The Travel Agency was advised that "[a]ccounts opened with trust or fiduciary designations . . . may be subject to levies and other legal process . . . ." The Travel Agency agreed that if the Bank was "served with a subpoena, restraining order, writ of attachment or execution, levy . . . or similar order relating to [its] account, [the Bank] will comply with that legal action." The Travel Agency also agreed that the Bank "must comply with any legal order to hold or remit funds held in [the Travel Agency's] account(s) . . . which [the Bank] believe[s] to be valid and which [the Bank] believe[s] applies to [the Travel Agency's] account, even if [the Bank is] not a party." In addition, "[i]f there is a dispute of any kind relating to [its] account, including conflicting instructions from [the Travel Agency] and other person(s) claiming to have rights, control or any interest whatsoever in [the] account, including the funds contained therein," the Travel Agency "expressly" authorized the Bank "at [its] sole discretion to freeze all activity in [its] account in order to maintain a status quo" and "to maintain the freeze until a satisfactory resolution of the dispute." Finally, the Travel Agency agreed that "[a]ny legal fees or expenses [the Bank] incur[s] in responding to any legal action (including, without limitation, attorney's fees . . .) may be charged against [the Travel Agency's] account." These basic terms and conditions governing the Bank's relationship with the Travel Agency remained in effect at all relevant times.

3

## II.    The Writ of Execution

In 2011, following a bench and jury trial, Ok Song Chang, a former employee of the Travel Agency, obtained a judgment against the Travel Agency for approximately $62,000 in damages and $300,000 in attorney fees.  (*Henry M. Lee Law Corp. v. Superior Court* (2012) 204 Cal.App.4th 1375, 1378.)

Ms. Chang's attorney, Henry M. Lee Law Corporation (HML), subsequently and ultimately successfully moved to intervene and amend the Chang judgment so that the attorney fee award was payable to it.  (*Henry M. Lee Law Corp. v. Superior Court*, *supra*, 204 Cal.App.4th at pp. 1388–1389.)  On July 18, 2012, a writ of execution (money judgment) (the Writ) was issued for the attorney fees portion of the Chang judgment.  The Writ identified the Travel Agency as the judgment debtor and HML as the judgment creditor.

On August 2, 2012, the Writ, along with a notice of levy was served on the Bank.  The notice of levy provided that the property to be levied upon was "any and all accts in the name of the judgment debtor."  Like the Writ, the notice of levy identified the Travel Agency as the judgment debtor and HML as the judgment creditor.  On that same day, the Bank took two actions:  First, it froze and segregated from the Travel Agency's account the sum of $347,128.20 plus a $100 legal process fee.  Second, the Bank sent to the Travel Agency a "Notice to Customer Named in Process," advising it of the notice of levy and the Bank's action in accordance with the notice of levy.

## III.    The Travel Agency's Initial Response to the Writ of Execution

The Travel Agency moved to quash the Writ.  On August 7, 2012, before the Bank delivered the funds to the levying office, the Court of Appeal issued an order temporarily staying the Writ.[2]

---

[2] On January 23, 2013, the Court of Appeal issued a subsequent order staying the enforcement of the Writ pending the outcome of the appeals in the Chang action.  The Travel Agency had appealed both the Chang judgment and the attorney fees award.  In August 2013, the Court of Appeal ruled in favor of the Travel Agency on both issues in a nonpublished opinion.  (*A-Ju Tours, Inc. v. Chang* (Aug. 28, 2013, B230858, B232815)

In addition, on August 8, 2012, the Travel Agency spoke with the Bank and demanded the immediate release of the frozen funds. The Bank, however, refused to release the funds. Instead, the Bank advised the Travel Agency that it would "maintain the status quo by keeping the funds segregated." The Bank further advised that it would not release the funds to anyone absent either (1) an agreement between the Travel Agency and its judgment creditor, HML, as to the disposition of the funds, or (2) a further order from the Court of Appeal "affecting the Bank's obligations in this matter."

Although the Travel Agency did not seek from the Court of Appeal some form of further relief "affecting the Bank's obligations," it did take a number of other steps to secure the release of its funds which it needed for its business. First, it requested that HML voluntarily withdraw the Writ, but this request went unanswered. Second, the Travel Agency repeatedly sought relief from the Chang trial court. On August 3, 2012, the Travel Agency filed an ex parte application before the judge overseeing the Chang action, seeking "an order compelling return of any monies seized from its bank account." That application was denied on August 3, 2012, for lack of proper notice. Third, the Travel Agency attempted to use the claim of exemption procedure. On August 9, 2012, the Travel Agency delivered three exemption claims to the County. The County, however, refused to serve the claims on HML, because the Travel Agency was not a "natural person." As a result, on August 17, 2012, the Travel Agency filed an ex parte application in department 90 of the superior court seeking an order determining that the levied-upon funds were exempt property. This application was denied on August 17, 2012, because, among other things, the Travel Agency "failed to follow" the claim exemption procedure.

IV.    **The Travel Agency's Lawsuit**

On January 9, 2013, the Travel Agency filed its complaint in this action, alleging 16 causes of action against 10 different defendants. With regard to the Bank, the Travel

---

rehear. den., Sep. 27, 2013, review den., Nov. 20, 2013.) Once the remittitur issued in the Chang action, the Bank released the frozen funds back to the Travel Agency.

Agency asserted the following five causes of action: breach of contract; breach of the implied covenant of good faith and fair dealing; conversion; unfair business practices; and "injunction." With regard to the County, the Travel Agency asserted two causes of action: violation of its constitutional rights under title 42 United States Code section 1983; and "injunction."

On February 19, 2013, the Bank demurred to the complaint. In addition, the Bank filed a special motion pursuant to the anti-SLAPP statute to strike all causes of action against it. Alternatively, the Bank also moved to strike the punitive damage claims asserted against it. On March 25, 2014, the trial court granted the Bank's anti-SLAPP motion, rendering its demurrer and motion to strike the punitive damages claim moot. In addition, the trial court found that the Bank was "entitled to recover its attorney's fees and costs." On April 16, 2014, a judgment was entered in the Bank's favor. On May 23, 2014, the Bank filed a motion for an order awarding it $89,460.90 in attorney fees. On August 27, 2014, the court granted the Bank's motion in principal part, awarding it $66,333.72 in attorney fees. An amended judgment was subsequently entered on September 24, 2014.

The County successfully demurred to the Travel Agency's original and first amended complaints, but each time the court granted the Travel Agency leave to amend. On April 14, 2014, the Travel Agency filed its second amended complaint, alleging once again, just two causes of action against the County: violation of its constitutional rights under title 42 United States Code section 1983; and "injunction." Once again, the County demurred. On September 10, 2014, the trial court once again sustained the County's demurrer, but this time without leave to amend.

On October 15, 2014, the Travel Agency timely appealed from both judgments.

## DISCUSSION

### I. The Judgment in Favor of the Bank is Affirmed

The governing principles with respect to anti-SLAPP motions were succinctly summarized by our Supreme Court in *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 (*Rusheen*). A SLAPP suit "seeks to chill or punish a party's exercise of

6

constitutional rights to free speech and to petition the government for redress of grievances." (*Id*. at p. 1055.)  The anti-SLAPP statute was enacted as "a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights."  (*Id*. at pp. 1055–1056.)

"In evaluating an anti-SLAPP motion, the trial court first determines whether the defendant has made a threshold showing that the challenged cause of action arises from protected activity."  (*Rusheen*, *supra*, 37 Cal.4th at p. 1056.)  If the trial court finds the defendant has made a threshold showing that a cause of action arises from protected activity, it must then decide whether the plaintiff has demonstrated a probability of prevailing on the claim.  To do so, plaintiff must show the complaint is legally sufficient and """"supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."""""  (*Ibid*.)

We review the trial court's ruling on an anti-SLAPP motion independently under a de novo standard.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)  We do not weigh credibility, but accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine whether it defeats the plaintiff's evidence as a matter of law.  (*Id.* at p. 326.)

**A.      The Causes of Action Alleged Against the Bank Arise from Protected Activities**

A defendant can meet his or her burden of making a threshold showing that a cause of action is one arising from protected activity by demonstrating the acts underlying the plaintiff's cause of action fall within one of the categories of section 425.16, subdivision (e).  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)

Section 425.16, subdivision (e) provides in relevant part:  "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing  made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; [and] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative,

executive, or judicial body, or any other official proceeding authorized by law." Acts in furtherance of free speech or petition rights are not limited to oral or written statements, but include "communicative conduct such as the filing, funding, and prosecution of a civil action." (*Rusheen*, *supra*, 37 Cal.4th at p. 1056.) "'A cause of action "arising from" defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.'" (*Ibid.*)

A claim arises from an act when the act ""''forms the basis for the plaintiff's cause of action" . . . .'"" (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 66 (*Equilon*).) A cause of action may be "triggered by" or associated with a protected act, but it does not necessarily mean the cause of action arises from that act." (*City of Cotati v. Cashman*, *supra*, 29 Cal.4th at pp. 77–78.) *Navellier v. Sletten* (2002) 29 Cal.4th 82), has cautioned that the "anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Id*. at p. 92.)

Courts use the "litigation privilege" (Civ. Code, § 47) "as an aid" in determining whether a given act falls within the ambit of section 425.16, subdivision (e)(2). (*Flatley v. Mauro*, *supra*, 39 Cal.4th at pp. 322–325.) For example, in *Rusheen*, *supra*, 37 Cal.4th 1048, the court affirmed the trial court's decision to grant an anti-SLAPP motion involving judgment enforcement actions after first considering whether the litigation privilege extended to postjudgment activities. The *Rusheen* court noted that the litigation privilege ""''applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' [Citation.] Thus, 'communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege [citation]. It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, *or afterwards*." (*Id.* at p. 1057, italics added.) In reaching its decision, the court in *Rusheen* expressly disapproved of *Drum v. Bleau, Fox*

8

*& Associates* (2003) 107 Cal.App.4th 1009, 1028 (see *Rusheen*, *supra*, 37 Cal.4th at pp. 1061–1065), which had held that "wrongfully levying on property pursuant to a writ of execution is not subject to the litigation privilege." The court in *Rusheen* concluded "that if the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct, which in this case included acts necessary to enforce the judgment and carry out the directive of the writ." (*Id*. at p. 1065.)

Here, the Travel Agency contends that the gravamen of its claims should be viewed as arising out of "physical acts" that are "non-communicative conduct" outside of the scope of the anti-SLAPP statute. Specifically, the Travel Agency claims the Bank physically/electronically "removed $347,228.20 from the trust account and withheld the funds from [the Travel Agency] by putting them in a segregated account" and also "refus[ed] to engage in physical acts . . . [of] transferring the money from the segregated account to [the Travel Agency]." In making this argument, the Travel Agency either ignores, or urges the court to disregard as immaterial, any of the legal proceedings that provide the context for the Bank's "physical acts," including the litigation that led to the Chang judgment, the legal processes involved in responding to the Writ, the stay order issued by the Court of Appeal, and the Bank's lawyer's communications with the Travel Agency regarding the Bank's efforts to comply with Writ. The Travel Agency's effort to separate the Bank's physical acts of freezing, segregating, and withholding funds from the broader litigation activity fails: as found by the trial court, the gravamen of the Travel Agency's causes of action arise from the constitutionally protected activity undertaken by the Bank in connection with the Bank's legal duties implicated in the postjudgment collection activities.

Although not a party to the Chang litigation, at the moment the Bank was served with the Writ, the Bank was bound by legal duties in connection with that litigation, as set forth in section 701.010 et seq. These included delivering to the levying officer the property and, within 10 days, a "garnishee's memorandum" "executed under oath" including a description of any property sought to be levied upon not delivered.

9

(§§ 701.020, 701.030.) The Bank never delivered the garnishee's memorandum to the levying officer only because the Travel Agency filed a petition and, on August 7, 2012, obtained a stay of the Writ from the Court of Appeal five days into the 10-day period for a response. In its August 7, 2012 order, which was served on the Bank that same day, the Court of Appeal noted that its stay was entered only "pending further order of [the] court," and set a briefing schedule for opposition and reply briefs regarding the Travel Agency's writ petition. On August 8, 2012, the Bank communicated to the Travel Agency, both orally and in writing, the Bank's view that the stay required the Bank to "maintain the status quo by keeping the levied funds segregated and . . . not release them to anyone absent either (1) an agreement between [the Travel Agency] and the judgment creditor . . . , or (2) a further order from the Court of Appeal affecting the Bank's obligations."[3]

Significantly, while the Travel Agency now argues that the focus of its case arises from the initial physical freezing and segregating of funds, the complaint itself makes clear that the gravamen of its claims is the Bank's refusal to inform the levying officer that the funds at issue were client funds and the Bank's position, communicated to the Travel Agency, that it viewed the stay as requiring preservation of the status quo. With respect to the breach of contract cause of action, the Travel Agency pleads that "[the Bank] breached the contract by failing to respond to the levy with a Garnishee's Memorandum but instead refusing to allow [the Travel Agency] to use [the funds]." The Travel Agency incorporates this allegation in each of its other causes of action against the Bank. With respect to the breach of the covenant of good faith and fair dealing, the

---

[3] The Travel Agency clearly recognized that the Bank had become part of the Chang litigation by seeking a court order directed to the Bank. On August 17, 2012, the Travel Agency filed an ex parte application for an order determining exemption claims in the Chang case, seeking a finding by the court that the funds being held by the Bank were "exempt property, not subject to levy" and requesting that the Bank and the levying officer "be ordered to release all levied upon property to [the Travel Agency]." HML, the judgment creditor, opposed the requested relief. The Bank appeared at the hearing on the matter, but took no position on the dispute. The court denied the Travel Agency's application.

10

Travel Agency adds that the Bank: "fail[ed] to fairly and promptly review the account and [the] law and recogniz[e] that it needed to file a Garnishee's memorandum"; "[f]ail[ed] to serve a Garnishee's Memorandum advising [the levying officer] that the funds in the Trust Account were trust funds and not the property of [the Travel Agency]"; "[s]tonewall[ed] by asserting the funds in the Trust Account were the property of [the Travel Agency]"; and [s]tonewall[ed] by ignoring that when the Court of Appeal issued [it's August 7, 2012 stay order], it did not order [the Bank] to hold the levied upon property" and that the Bank wrongfully asserted that the order prohibited the release of the funds. Finally, the conversion and unfair business practice causes of action incorporate all of the above allegations and add that "[the Travel Agency has] made multiple demands upon [the Bank] to return the [funds] but [the Bank has] refused to do so."

These complaint allegations, fairly construed, assert liability based upon the Bank's statutory obligations to communicate information to an executive officer (the levying officer), and the Bank's written and oral communications to the Travel Agency regarding the meaning of the Court of Appeal's stay order. As such, they fall within the meaning of section 425.16, subdivision (e)(2). Accordingly, the trial court correctly determined that the Bank met its burden of making "a threshold prima facie showing" (*Kajima Engineering and Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 928) that the Travel Agency's claims against it "arise from" statements or related communicative conduct taken by the Bank in connection with issues under "consideration or review" by an "executive" or "judicial body."

**B.     The Travel Agency Did Not Show a Probability of Prevailing**

With the Bank having made its threshold showing, the burden shifted to the Travel Agency to show a "probability that [it] will prevail on [its] claim[s]." (§ 425.16, subd. (b)(1).) The trial court found that the Travel Agency was unable to meet its burden because it "cannot avoid the defense of the litigation privilege." We agree.

The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a "publication or broadcast"—that is any "communicative acts"—made as

11

part of a "judicial proceeding" is privileged. (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 209–211.) This privilege is absolute in nature, applying "to *all* publications, irrespective of their maliciousness." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 216.) "[T]he privilege applies to any communication . . . made in judicial or quasi-judicial proceedings . . . by litigants or other participants authorized by law." (*Id.* at p. 212; see *Foothill Federal Credit Union v. Superior Court* (2007) 155 Cal.App.4th 632, 636 ["litigation privilege 'is not restricted to the actual parties to the lawsuit'"].) The disputed communication or related act need only have "some connection or logical relation to the action." (*Silberg*, at p. 212.)

The privilege applies to a wide array of claims, including all tort claims (except malicious prosecution) (*Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 212), and has been interpreted to preclude constitutional and statutory causes of action (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 952 [suit based on violation of constitutional right]; *Rubin v. Green* (1993) 4 Cal.4th 1187, 1201 [suit based on violation of statute]; *Ribas v. Clark* (1985) 38 Cal.3d 355, 364–365 [statutory violation].) In addition, the privilege may extend to breach of contract claims if "its application furthers the policies underlying the privilege." (*Wentland v. Wass* (2005) 126 Cal.App.4th 1484, 1494 [declining to apply privilege to breach of contract claim because it was "not based on allegedly wrongful conduct during litigation"]; see *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1497 [finding privilege applied to contract claim because the "same communicative conduct formed the basis for the tort and breach of contract causes of action"].) "Any doubt as to whether the privilege applies is resolved in favor of applying it." (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529.)

As noted above, the privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards" including, as our Supreme Court made clear in *Rusheen*, judgment enforcement efforts. (See *Rusheen*, *supra*, 37 Cal.4th at p. 1057; see also *O'Keefe*, *supra*, 84 Cal.App.4th at pp. 134–136; *Brown v. Kennard* (2001) 94 Cal.App.4th 40, 49–50 (*Brown*); *Tom Jones*

12

*Enterprises, Ltd. v. County of Los Angeles* (2013) 212 Cal.App.4th 1283, 1294–1297 (*Tom Jones*.)

In *O'Keefe*, *supra,* 84 Cal.App.4th 130, the plaintiff sued for abuse of process after the defendants had attempted to enforce a judgment for attorney fees, including levying on one of plaintiff's bank accounts while that action was on appeal and arguably stayed. (*Id.* at pp. 132–133.) The defendants demurred, inter alia, on the ground that their preliminary collection efforts were "absolutely" protected by the litigation privilege. (*Id.* at p. 133.) The trial court sustained the demurrer and the Court of Appeal affirmed, holding that defendants' enforcement efforts were "an extension of th[e] judicial process" (*id.* at p. 134) and "were logically and legally related to the realization of a litigation objective—that is, collection of a judgment." (*Id.* at p. 135.) The *O'Keefe* court added that the fact that defendants' conduct was "outside the courtroom" was "immaterial" to the application of the litigation privilege. (*Id.* at p. 134.)

In *Brown*, *supra*, 94 Cal.App.4th 40, the Court of Appeal held that the trial court properly sustained a demurrer without leave to amend on the basis of the litigation privilege when the plaintiff alleged that the defendant wrongfully levied on legally exempt assets of a nonparty to an invalid judgment. The court stated: "[Plaintiff] claims that the levy was neither a statement nor a communication within the litigation privilege. Preliminarily, we note that *judgment enforcement efforts, as an extension of a judicial proceeding and related to a litigation objective, are considered to be within the litigation privilege*. Specifically, [the plaintiff] contends that his abuse of process claim does not rely on the communicative act of applying for a writ of execution . . . . [Plaintiff] maintains that his abuse of process claim arises from the wrongful levy effected pursuant to the writ, including the interference with his property rights and the levy upon exempt property. . . . [Plaintiff] is claiming a 'distinction without a difference.' The act of applying for a writ is privileged. The privilege extends to torts arising from the privileged statement or publication. As such, not only does the privilege protect the application for the writ of execution, it also extends to the act of carrying out the directive of the writ." (*Id.* at pp. 49–50, fns. omitted, italics added; *Rusheen*, *supra*, 37 Cal.4th at

p. 1065 ["we agree with those cases that have applied the litigation privilege to limit the availability of the tort of abuse of process in the judgment enforcement context"].)

In *Tom Jones*, *supra*, 212 Cal.App.4th 1283, the judgment debtor was the trustee of a family trust. (*Id*. at p. 1287.) The plaintiffs instructed the sheriff's department to levy the writ of execution on deposit accounts in the name of the judgment debtor. (*Ibid*.) The sheriff apparently seized the assets in deposit accounts owned by the judgment debtor individually, as well as in her capacity as a trustee. (*Ibid*.) The plaintiffs instructed the sheriff's department to release any of the judgment debtor's individual property; the sheriff's department instead released all of her property, including that held in her capacity as trustee. (*Id*. at pp. 1287–1288.) The plaintiffs filed a negligence lawsuit against the sheriff's department "for causing the release of funds subject to a writ of execution contrary to the instructions of plaintiffs." (*Id*. at p. 1286.) The Court of Appeal held the "[p]laintiffs' negligence claim based on the instructions given to the bank by a Sheriff's Department employee is barred by the litigation privilege." (*Id*. at p. 1294.) The court explained, "the gravamen of the action—the issuance of written instructions by the Sheriff's Department (presumably to the bank) to fully release the funds—was a communicative act. The litigation privilege even 'extends' to what may be considered a noncommunicative act—the act of releasing the funds." (*Id*. at p. 1296.) The court in *Tom Jones* further explained that "[j]ust as the court in *Brown*[, *supra*, 94 Cal.App.4th 40], deemed a wrongful levy effected pursuant to the writ of execution to be protected by the litigation privilege, a plaintiff's claim for wrongful release of funds taken pursuant to the levy of writ of execution is similarly barred by the litigation privilege." (*Id*. at p. 1295.) The court in *Tom Jones* went on to link its holding with that in both *Rusheen*, *supra*, 37 Cal.4th 1048 and *Brown*: "This case is to some extent an extension of the principles of the litigation privilege enunciated in *Rusheen* . . . and *Brown* . . . . But as the court stated in *Rusheen*, . . . the litigation privilege limits tort liability 'in the judgment enforcement context'; and ' . . . California courts have given the privilege an expansive reach.' [Citation.] Accordingly, the litigation privilege bars plaintiffs' claim." (*Id*. at pp. 1296–1297.)

14

Drawing on the reasoning and holdings of *Rusheen*, *supra*, 37 Cal.4th 1048, *O'Keefe*, *supra,* 84 Cal.App.4th 130, *Brown*, *supra*, 94 Cal.App.4th 40, and *Tom Jones*, *supra*, 212 Cal.App.4th 1283, it is clear that the Bank's disputed communications and communicative conduct in connection with the Writ are protected by the litigation privilege. The Bank, while not a litigant in the Chang action, was an "'other participant[] authorized by law.'" Moreover, the Bank's communications and communicative conduct in carrying out the Writ and related court orders had an undeniable "'connection'" or "'logical relation'" to the Chang *action*—the collection of the sizable and disputed attorney fees. Because the Travel Agency's contract, tort, and statutory claims all involve the same disputed communications and communicative conduct by the Bank regarding the enforcement of the judgment in the Chang action, application of the litigation privilege here furthers the policies underlying its protections. Accordingly, the trial court properly granted the Bank's special motion to strike and entered judgment in favor of the Bank.

## II.    The Bank's Attorney Fees Award is Affirmed

The "prevailing defendant" on a special motion to strike "shall be entitled" to recover his or her attorney fees and costs. (§ 425.16, subd. (c)(1), (2).) "[A]ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131.) "The dual purpose of this mandatory attorney fee award is to discourage meritless lawsuits and to provide financial relief to the victim of a SLAPP lawsuit." (*City of Los Angeles v. Animal Defense League* (2006) 135 Cal.App.4th 606, 627, fn. 19.)

By its motion, however, the Bank sought attorney fees for "all activities performed by the Bank's counsel . . . during [the] life of the case." In other words, the Bank did not limit its recovery to just those fees associated with its anti-SLAPP motion. In order to recover all of its fees, the Bank brought its motion pursuant to the parties' contract and Civil Code section 1717, as well as to the SLAPP statute. Civil Code section 1717 allows the "prevailing party" in "any action on a contract" to recover its attorney fees and costs if the contract "specifically provides" for such a recovery. (Civ. Code, § 1717, subd. (a).)

15

Here, the Travel Agency expressly agreed to pay "[a]ny legal fees or expenses [the Bank] incur[s] in responding to any legal action (including, without limitation, attorney's fees . . . )."

The trial court found that the Bank was "entitled to attorney's fees incurred, regardless of whether or not they were generated in connection with the anti-SLAPP motion, on the basis of [Civil Code] § 1717." On appeal, the Travel Agency contends that the trial court's award was in error even if the trial court found that the Bank's communications and communicative conduct were protected by the anti-SLAPP statute; under such a situation, the attorneys' fee award should have been limited to just those fees "done in connection with the anti-SLAPP motion" and "'not to the entire action.'" According to the Travel Agency, "the prevailing party may recover attorney's fees under [Civil Code] section 1717 only as they relate to the contract action. [Citation.] Since the case never proceeded to a merits based determination on any claim, it was error to award attorneys fees under [Civil Code] section 1717." We disagree.

Plaintiffs' argument is premised on a misreading of the law both with regard to the significance of an anti-SLAPP ruling and with regard to what it means to be a "prevailing party" under Civil Code section 1717.

First, as our Supreme Court has made clear, the granting of an anti-SLAPP motion is effectively a decision on the merits. "'[S]ection 425.16 provides an efficient means of dispatching, early on in a lawsuit, [and discouraging, insofar as fees may be shifted,] a plaintiff's meritless claims.'" (*Equilon*, *supra*, 29 Cal.4th at p. 63.)

Second, a prevailing party under Civil Code section 1717 is "the party who recovered a greater relief in the action on the contract." (Civ. Code, § 1717, subd. (b)(1).) "California courts construe the term 'on a contract' liberally." (*Turner v. Schultz* (2009) 175 Cal.App.4th 974, 979.) "'As long as the action "involve[s]" a contract it is "'on [the] contract'" within the meaning of [Civil Code] section 1717. [Citations.]'" (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894; see *Mustachio v. Great Western Bank* (1996) 48 Cal.App.4th

16

1145, 1151 [conversion claim was an "action on the contract within the meaning of . . . section 1717"].)

With regard to whether a party has prevailed on a contract, "the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876.) The trial court makes that determination "only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.'" (*Ibid*.) The trial court "'is given wide discretion in determining which party has prevailed on its cause(s) of action. Such a determination will not be disturbed on appeal absent a clear abuse of discretion.'" (*Smith v. Krueger* (1983) 150 Cal.App.3d 752, 756–757.)

Here, the trial court did not abuse its discretion. It correctly found that the Travel Agency's action, even though it involved both contract and noncontract claims was still "on the contract" because both the contract and noncontract claims were based on "the same common core of facts." Moreover, as discussed above, the trial court correctly found that the Travel Agency did not and could not show a probability of prevailing on any of its claims against the Bank—contract, tort or statutory—due to the litigation privilege: "A review of the available pleadings and evidence document that the plaintiff cannot avoid the defense of the litigation privilege." As a result of this finding, the Bank recovered a "greater relief in the action on the contract" than did the Travel Agency. The Travel Agency's litigation objectives were far reaching, seeking general damages, special, economic and consequential damages, and punitive damages. However, as the judgment in favor of the Bank makes clear, as a result of the Bank's special motion the Travel Agency recovered "nothing" from its claims against the Bank. Accordingly, the trial court properly awarded the Bank the attorney fees it incurred during the life of the case, not just those incurred in connection with the anti-SLAPP motion.

17

## III. The Judgment in Favor of the County is Affirmed

In its second amended complaint, the Travel Agency asserts two causes of action against the County: violation of its constitutional rights under title 42 United States Code section 1983; and "injunction." The state courts of California have accepted concurrent jurisdiction with the federal courts to adjudicate suits brought under the federal Civil Rights Act (42 U.S.C. § 1983). (*Williams v. Horvath* (1976) 16 Cal.3d 834, 837.) Because an action under section 1983 is based on federal statutory law, we look to federal law to determine what "whether a complaint pleads a cause of action under section 1983 sufficient to survive a general demurrer." (*Bach v. County of Butte* (1983) 147 Cal.App.3d 554, 563, fn. omitted.)

Federal Rule of Civil Procedure, rule 8(a)(2) (28 U.S.C.) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." (*Conley v. Gibson* (1957) 355 U.S. 41, 47 [78 S.Ct. 99, 2 L.Ed.2d 80].) While a complaint attacked by a Federal Rule of Civil Procedure, rule 12(b)(6) (28 U.S.C.) motion to dismiss does not need detailed factual allegations to survive, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [citation]. Factual allegations must be enough to raise a right to relief above the speculative level." (*Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 555 [127 S.Ct. 1955, 167 L.Ed.2d 929].)[4] This standard was further clarified in *Ashcroft v. Iqbal* (2009) 556 U.S. 662 [129 S.Ct. 1937, 173 L.Ed.2d 868], a section 1983 case: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

---

[4] Previously, a complaint alleging civil rights violations was required to plead the violations with greater specificity than otherwise required under Federal Rule of Civil Procedure, rule 8(a) (28 U.S.C.). However, since 1993, the United States Supreme Court has held that the pleading rules contained in the Federal Rules of Civil Procedure apply to all claims and that there is no "'heightened pleading standard'" for section 1983 cases. (*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit* (1993) 507 U.S. 163, 167–168 [113 S.Ct. 1160, 122 L.Ed.2d 517].)

'state a claim to relief that is plausible on its face.' [Citation.] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation.] Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' [Citation.] [¶] Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [Citation.] . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. [Citation] . . . [Citation.] . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (*Ashcroft*, at pp. 678–679.)

On appeal, a decision to dismiss under Federal Rule of Civil Procedure, rule 12(b)(6) (28 U.S.C.), like a demurrer under section 430.10, subdivision (e) is reviewed de novo. (*Manzarek v. St. Paul Fire & Marine Ins. Co*. (9th Cir. 2008) 519 F.3d 1025, 1030 (*Manzarek*); *McCall v. PacifiCare of Cal., Inc*. (2001) 25 Cal.4th 412, 415.) Similarly a dismissal without leave to amend is reviewed for abuse of discretion under both our rules and the Federal Rules. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Manzarek* at p. 1031.)

### A.	The Travel Agency's Claims Against the County

With regard to its title 42 United States Code section 1983 claim, the Travel Agency alleged that the County refused to serve the claims of exemption on HML because the claims did not state "natural persons exemptions."[5]  The Travel Agency

---

[5] The Travel Agency sought to claim exemptions to the Writ pursuant to section 695.040.  Section 695.040 requires that the party seeking an exemption follow the "claim of exemption procedure" detailed in Chapter 4, titled "Exemptions."  (§ 703.010 et seq.)

further alleged that this refusal by the County was not an isolated incident but the result of a "policy, practice and custom" of the County. According to the Travel Agency, "the customs practices and policies" of the County "amounted to deliberate indifference to the rights of persons, such as [the Travel Agency.]" The Travel Agency further alleged that this "official position" by the County "violated the civil rights of [the Travel Agency] by wrongfully depriving [it] of property without due process of law in violation of their Constitutional rights guaranteed by the Fourteenth Amendment[] to the Federal Constitution."

The trial court dismissed the claims against the County because (a) the Travel Agency "continue[d] to fail to demonstrate that [the County's] action was taken with the requisite degree of culpability and that there is a direct and causal link between the [County's] action and the deprivation of [the Travel Agency's] federal rights," and (b) ""[i]njunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted.""""

As discussed below, we find that trial court's dismissal was proper.

**B.      The Travel Agency Fails to State a Claim Against the County**

*1.      Pleading Requirements for a Title 42 United States Code Section 1983 Claim*

Title 42 United States Code section 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

---

Section 703.020, which identifies the "[p]ersons who may claim exemptions," states that the "exemptions provided by this chapter apply only to property of a natural person." (§ 703.020, subd. (a).) Because the Travel Agency was a corporation, not a natural person, the County refused to serve the exemption claims on HML. The Travel Agency claims that this refusal was improper under section 695.040, which does not exclude corporations from its protections, and under the Fourteenth Amendment.

20

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."  (42 U.S.C § 1983.)

A municipality may be held liable under a claim brought under title 42 United States Code section 1983only when the municipality inflicts an injury, and it may not be held liable under a respondeat superior theory.  (*Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, 694 [98 S.Ct. 2018, 56 L.Ed.2d 611] (*Monell*); *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 829 [citing with approval to *Monell*.)

At least two routes can lead to the conclusion that a municipality has inflicted a constitutional injury.  First, a plaintiff can show that a municipality itself violated someone's rights or that it directed its employee to do so.  (*Board of Comm'rs of Bryan Cty. v. Brown* (1997) 520 U.S. 397, 404 [117 S.Ct. 1382, 137 L.Ed.2d 626].)  To show that the municipality violated someone's rights or instructed its employees to do so, a plaintiff can prove that the municipality acted with "the state of mind required to prove the underlying violation," just as a plaintiff does when he or she alleges that a natural person has violated his federal rights.  (*Id.* at p. 405.)  For example, in *Monell*, *supra*, 436 U.S. 658, it was alleged the city had a policy of discriminating against pregnant women in violation of the Fourteenth Amendment.  (*Id*. at p. 658.)

Alternatively, in limited situations, a plaintiff can demonstrate that a municipality is responsible for a constitutional tort committed by its employee, even though it did not direct the employee to commit the tort.  (*Board of Comm'rs of Bryan Cty. v. Brown*, *supra*, 520 U.S. at pp. 406–407; *City of Canton v. Harris* (1989) 489 U.S. 378, 387 [109 S.Ct. 1197, 103 L.Ed.2d 412].)  Under this theory of liability, a plaintiff can allege that through its omissions the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation.  (*Canton*, at pp. 387–389.)  However, because *Monell*, *supra*, 436 U.S. 658, held that a municipality may not be held liable under a theory of respondeat superior, a plaintiff must show that the municipality's deliberate indifference led to its

21

omission and that the omission caused the employee to commit the constitutional violation. (*Canton*, at p. 387.) To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation. (*Farmer v. Brennan* (1994) 511 U.S. 825, 841 [114 S.Ct. 1970, 128 L.Ed.2d 811].) Compared to the more direct route to municipal liability discussed above, "much more difficult problems of proof" are presented in a case where a municipal employee acting under a constitutionally valid policy violated someone's rights. (*Board of Comm'rs of Bryan Cty. v. Brown*, *supra*, 520 U.S. at p. 406.)

In *City of Canton v. Harris*, *supra*, 489 U.S. 378, the United States Supreme Court held that the "inadequacy of police training" may result in a municipality being held liable under title 42 United States Code section 1983 "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." An omission, such as failure to train, reflects a "deliberate" or "conscious" choice on a municipality's part and, as such, may constitute a policy or custom creating liability for the municipality. (*Id*. at pp. 388–389.) However, mere allegations that an existing training program constitutes a "policy" for which the municipality is responsible will not suffice. (*Id*. at p. 389.) As explained by the *Canton* Court: "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. [Citations.] It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make

22

mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." (*Id.* at pp. 390–391.)

Here, the Travel Agency has seemingly elected to proceed under both routes, alleging that there was an "intentional[] . . . conscious disregard" of its "known rights" and through a "fail[ure] to train" the County was "deliberate[ly] indifferen[t]" to its rights.

2. *The Travel Agency Fails to Meet the Pleading Requirements for a Title 42 United States Code Section 1983 Claim*

"By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." (*Gomez v. Toledo* (1980) 446 U.S. 635, 640 [100 S.Ct. 1920, 64 L.Ed.2d 572].)

Although the pleading requirements for a section 1983 claim are minimal, the Travel Agency's allegations are exactly the type of legal conclusions, couched as factual allegations, that cannot defeat a demurrer/motion to dismiss. The Travel Agency merely infers from a single deputy sheriff's conduct that the County has an inadequate training program for its employees with regard to the claim exemptions procedure, yet does not go further to explain the training program or its purported inadequacy. Yet without more facts, we cannot conclude that the County had an inadequate training program which caused the Travel Agency's rights to be violated. For all that is alleged, the County could have a perfectly sound training program for its employees, which was just not adhered to by the deputy in the instant case. Similarly, the Travel Agency maintains that the County had a "custom and practice" of committing illegal acts in this regard but offers no factual averments showing the alleged custom and practice.

In short, dismissal of the title 42 United States Code section 1983 cause of action was correct because the Travel Agency's pleading is filled with "[t]hreadbare recitals of the elements . . . supported by mere conclusory statements." (*Ashcroft v. Iqbal*, *supra*, 556 U.S. at p. 678.) The Travel's Agency's factual allegations "do not permit the court to

23

infer more than the mere possibility of misconduct."**6** (*Id.* at p. 679.) Moreover, dismissal with leave to amend was proper because the Travel Agency has not shown—either in the trial court or on appeal—how it could amend its pleading so as to cure its defects; instead, it elected to stand by its claims as alleged in the operative pleading. In the absence of any additional factual allegations that would make the title 42 United States Code section 1983 claim plausible on its face, dismissal with prejudice was proper.**7**

---

**6** On appeal, for the first time, the County argues that the Travel Agency failed to state a claim because its conduct was protected by the litigation privilege. As a general rule, theories not raised in the trial court cannot be asserted for the first time of appeal. The reason for this general rule is basic fairness—it would be inequitable to consider a new theory where the opposing party "was [not] reasonably put on notice to present all its evidences," especially where, as here, the new theory contemplates a factual situation "open to controversy." (*Richmond v. Dart Industries, Inc*. (1987) 196 Cal.App.3d 869, 879.) Because consideration of this new theory is an issue within our discretion, we are not required to consider the County's theory, even if it raised a pure question of law. (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767.) We decline to consider this new theory.

**7** The Travel Agency's derivative cause of action against the County for a preliminary and permanent injunction fails as a matter of course because (a) such a request for relief is not a stand-alone cause of action (*Shell Oil Co. v. Richter* (1942) 52 Cal.App.2d 164, 168; *Shamsian v. Atlantic Richfield Co*. (2003) 107 Cal.App.4th 967, 984) and (b) its predicate (the 42 U.S.C. § 1983 claim) is defective.

24

**DISPOSITION**

The judgments and postjudgment order are affirmed.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


                                              JOHNSON, J.


I concur:


        MOOR, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25

ROTHSCHILD, P. J., Dissenting.

I respectfully disagree with the majority in two respects.  First, I do not agree that the Travel Agency's suit against the Bank "aris[es] from" petitioning conduct for purposes of the anti-SLAPP statute's first-prong analysis.  (Code Civ. Proc., § 425.16, subd. (b)(1) (§ 425.16); see *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.)  In my view, that ends the anti-SLAPP inquiry.

Next, I disagree with the trial court and majority's conclusion that the Bank's conduct is protected by the litigation privilege.  Thus, even if the Travel Agency's suit did arise from petitioning conduct, I disagree that the Travel Agency cannot show a probability of success as required by the second prong of the anti-SLAPP statute.  (*City of Cotati v. Cashman*, *supra*, 29 Cal.4th at p. 76.)

I.      *The Anti-SLAPP Motion*

The anti-SLAPP statute does not apply automatically to a cause of action simply because it in some way involves protected conduct:  "That a cause of action arguably may have been triggered by protected activity does not entail that it is one *arising from* such."  (*City of Cotati v. Cashman*, *supra*, 29 Cal.4th at p. 78, emphasis added.)  Instead, "it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies."  (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188.)  Here, the majority holds that the gravamen of the Travel Agency's claim is communicative, namely "the Bank's refusal to inform the levying officer that the funds at issue were client funds and the Bank's position, communicated to the Travel Agency, that it viewed the stay as requiring preservation of the status quo."  (Maj. opn. *ante*, at p. 11.)  I disagree.  The Travel Agency sued the Bank not because of its communications, but because it froze the Travel Agency's trust account.  The Bank's communications were no more the gravamen of this case than the sending of a ransom note is the gravamen of kidnapping.

In support of its position that the case satisfies the first prong of the anti-SLAPP statute, the majority looks to cases construing the litigation privilege.  As I explain below, I do not believe the litigation privilege protects the Bank in this case.  But even if it did,

that would not necessarily justify a conclusion that the first prong has been satisfied. Although the litigation privilege is "an aid in construing the scope of section 425.16, subdivision (e)(1) and (2) with respect to the first step of the two-step anti-SLAPP inquiry" (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323), "the litigation privilege and the anti-SLAPP statute are substantively different statutes that serve quite different purposes." (*Id*. at p. 322.) Unlike the litigation privilege, "[s]ection 425.16 [the anti-SLAPP statute] is not concerned with securing for litigants freedom of access to the judicial process. The purpose of section 425.16 is to protect the valid exercise of constitutional rights of free speech and petition from the abuse of the judicial process." (*Id*. at p. 324.) In *Rusheen v. Cohen* (2006) 37 Cal.4th 1048 (*Rusheen*), our Supreme Court held that the anti-SLAPP statute applied to a suit based on a plaintiff's attempt to levy on a defendant's property to satisfy a money judgment because "the gravamen of the action was not the levying act, but the procurement of the judgment based on the use of allegedly perjured declarations of service." (*Id*. at p. 1062.) In other words, the act of levying was merely the continuation of the protected petitioning conduct by the plaintiff in filing and winning its suit against the defendant. Here, by contrast, the Bank did not exercise its right to petition by filing suit against the Travel Agency. It is not entitled to the protection of the anti-SLAPP statute.

II.     *The Litigation Privilege*

The litigation privilege does not protect the Bank because the Bank was not a party to the litigation, nor did it take part in the underlying litigation. The litigation privilege applies to communications "'by litigants or other participants authorized by law.'" (*Rusheen*, *supra*, 37 Cal.4th at p. 1057.) It has been held to apply to "[t]he statements of judges, attorneys, parties, witnesses, jurors, and other participants in judicial proceedings," but "[n]onlitigants and nonparticipants are not protected by the privilege." (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 568, p. 828.) Thus, in *Wise v. Thrifty Payless, Inc.* (2000) 83 Cal.App.4th 1296, a man who hoped to gain an advantage in a custody battle with his ex-wife obtained her prescription drug records from a pharmacy without her authorization. (*Id*. at pp. 1299-1300.) The court held that

2

the litigation privilege protected the man, but it did not protect the pharmacy, a non-party to the divorce proceedings, from its own tortious conduct in releasing the information without authorization. (*Id*. at pp. 1303-1304.) The court justified its decision on the ground that "[a]llowing a party at fault to evade responsibility for its wrongful conduct on the coattails of a statutory privilege enjoyed by someone else conflicts with" basic principles of tort law. (*Id*. at p. 1305.)

In this respect, the current case is distinguishable from *Rusheen*, *supra*, 37 Cal.4th 1048. The Court in *Rusheen* held that the litigation privilege protects judgment creditors in their attempts to enforce judgments by levying on the property of judgment debtors. (*Id*. at p. 1065.) But the Bank was not a judgment creditor, nor was it a participant in the litigation in any other respect. The litigation privilege does not protect it any more than it protected the pharmacy in *Wise v. Thrifty Payless, Inc.*, *supra*, 83 Cal.App.4th 1296.

This distinction is important because one of the main functions of the litigation privilege is to require the parties to litigate their dispute thoroughly in a single suit. "'For our justice system to function, it is necessary that litigants assume responsibility for the complete litigation of their cause during the proceedings. To allow a litigant to attack the integrity of evidence after the proceedings have concluded, except in the most narrowly circumscribed situations, such as extrinsic fraud, would impermissibly burden, if not inundate, our justice system.'" (*Rusheen*, *supra*, 37 Cal.4th at p. 1064.) As the court noted in *Rusheen*, the issue in that case "had already been decided" in the underlying litigation. (*Ibid.*) Indeed, the court noted several ways the judgment debtor could have obtained relief within the underlying case: The plaintiff could "mov[e] to recall and quash the writ of execution (citations); post[] an undertaking or seek[] a writ of supersedeas to thwart enforcement efforts (citation); or fil[e] a claim of exemption from execution." (*Ibid.*)

This case presents entirely different circumstances to which the reasoning of *Rusheen* does not apply. There was no opportunity for the Travel Agency to bring its claim against the Bank in the underlying litigation, because the Bank was not a party to that litigation. The remedies suggested by the court in *Rusheen*, *supra*, 37 Cal.4th

3

at p. 1064, either were unavailable to the Travel Agency or would have provided only partial relief. The Travel Agency could not move to recall and quash the writ of execution because, apparently, there was nothing wrong with the writ itself: The Travel Agency's claim was that the Bank responded wrongly to the writ by freezing the assets in its trust account, rather than its own account. Nor was a claim of exemption an available remedy because "[t]he exemptions . . . apply only to property of a natural person." (Code Civ. Proc., § 703.020, subd. (a).) Posting an undertaking might have been possible but might also have been too late because of the immediate need for the funds, while obtaining a writ of supersedeas only maintained the freeze on the assets, and did not require them to be released to the Travel Agency. Because the court's reasoning in upholding the litigation privilege in *Rusheen* does not apply here, we should not extend the rule of *Rusheen* to this case.[1]

The Travel Agency's primary claim in this appeal is relatively simple. It alleges that it maintained a trust account at the Bank for the benefit of its customers, as required by Business and Professions Code section 17550.15. Because the funds in that account belonged to the Travel Agency's customers, the Travel Agency claims that those funds were not subject to levy by a judgment creditor of the Travel Agency, and that the Bank

---

[1]     Of the other cases the majority cites in support of its position on the litigation privilege, only *Tom Jones Enterprises, Ltd. v. County of Los Angeles* (2013) 212 Cal.App.4th 1283 held that the litigation privilege protected an entity that was not a litigant or person directly involved in the underlying lawsuit. In that case, the court held that the litigation privilege protected a sheriff's department from alleged negligence in levying on a judgment debtor's bank account. (*Id*. at pp. 1296-1297.) The court acknowledged that its decision represented an "extension of the principles of the litigation privilege" beyond *Rusheen.* (*Id*. at p. 1296.) That case is distinguishable in three important respects. First, *Tom Jones* did not involve an anti-SLAPP motion. Second, the bank is more remotely connected to the litigation than was the sheriff's department in *Tom Jones*. Third, despite the opinion barring a remedy against the sheriff's department, the opinion left undisturbed the creditor's remedy of pursuing the creditor's current or future assets. Here, by contrast, the Travel Agency is left without any remedy against the Bank or anyone else for the loss suffered by the Bank's freezing the trust account. For these reasons and others I discuss, *Rusheen* should not be extended to excuse the Bank from its negligence.

4

acted improperly by freezing the funds in the account and refusing to release them. (See Code Civ. Proc., § 699.720, subd. (a)(8) [establishing that "[t]he interest of a trust beneficiary" is not subject to writ of execution].)  Despite making numerous attempts, both in the underlying case and now here, the Travel Agency has been unable to obtain a decision on the merits of its case.

In order for the litigation privilege to serve the ends for which it was intended, it need not be extended so far as to provide absolute protection to banks that violate statutory and contractual requirements in executing levies on their customers' accounts.


ROTHSCHILD, P. J.