Filed 8/21/25  Halo v. Scuderi CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ADI HALO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SALVATORE SCUDERI,<br><br>    Defendant and<br>    Appellant. | B331563<br><br>(Los Angeles County<br>Super. Ct. No.<br>21STCV12868) |

APPEAL from an order of the Superior Court of Los Angeles County, Frank M. Tavelman, Judge.  Affirmed.

Law Offices of Scott E. Schutzman and Scott E. Schutzman for Defendant and Appellant.

The Bucklin Law Firm and Stephen Loomis Bucklin for Plaintiff and Respondent.

_____

Salvatore Scuderi appeals from an order denying his special motion to strike Adi Halo's complaint alleging malicious prosecution. (Code Civ. Proc., § 425.16.)[1] Scuderi contends the trial court erred in finding Halo met her burden of establishing a probability of prevailing on her claim against Scuderi. Scuderi argues that, contrary to the court's ruling, he had probable cause to file a prior action against Halo for intentional interference with contractual relations. Scuderi also asserts the court erred in failing to consider his good faith reliance on his attorney's advice as an affirmative defense to Halo's malicious prosecution cause of action. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Lawsuits*

   *1. Halo's 2018 small claims action*

In 2018 Halo filed a small claims action against Stagecrafts, LLC and its member Gregory Crafts seeking damages for the failure to care for a painting that Halo had given Stagecrafts to display in its office,[2] which was later stolen. On May 25, 2018 Halo obtained a $5,000 judgment against Stagecrafts in the action.

---

[1]    Further undesignated statutory references are to the Code of Civil Procedure. Section 425.16 is commonly referred to as the anti-SLAPP statute.

[2]    Although the complaint in the small claims action refers to theft of the painting from Stagecrafts's office, other documents refer to theft from a theater.

## 2. *Scuderi's 2019 action for intentional interference with contractual relations*

On February 4, 2019 Scuderi filed a complaint against Halo for intentional interference with contractual relations (2019 contractual interference action). Scuderi's attorney, John Sullivan, filed the action on Scuderi's behalf. Scuderi alleged that in 2016 he and Stagecrafts entered into an agreement under which Scuderi loaned Stagecrafts $25,000 to finance a theater equipment leasing company in Los Angeles County. After judgment was entered in the small claims action, "Scuderi and Stagecrafts entered into an agreement permitting Scuderi to record a security agreement with the California Secretary of State with a lien against Stagecrafts['s] assets including but not limited to all equipment, proceeds and bank accounts." Scuderi alleged he recorded a lien before Halo obtained an abstract of judgment, and therefore he had "a priority lien" superior to Halo's rights as a creditor. Although Scuderi's attorney notified Halo of the lien's priority over Halo's right to collect on the judgment, Halo attempted to levy on Stagecrafts's bank account. Scuderi alleged Halo knew about Scuderi's loan agreement with Stagecrafts; Halo intended to disrupt Stagecrafts's performance under the contract; Halo's conduct prevented Stagecrafts's repayment of Scuderi's loan; and Halo's conduct was a substantial factor in causing harm to Scuderi.

## 3. *Halo's 2021 action for malicious prosecution*

On April 5, 2021 Halo filed a complaint for malicious prosecution against Scuderi and Sullivan (styled as a single cause of action for "wrongful use of civil proceedings") based on the filing of the 2019 contractual interference action. (Capitalization omitted.) Halo alleged that in the 2019 action, Halo's attorney,

3

Stephen Bucklin, requested Sullivan explain the basis for Halo's liability to Scuderi. Sullivan responded that he was "seeking direction from the client." Sullivan did not respond further, but after Halo filed her trial brief in March 2021, Sullivan told Bucklin that Scuderi would dismiss his complaint against Halo with prejudice in return for full mutual releases. Halo refused to settle. On March 30, 2021 Sullivan filed a request for dismissal of the action without prejudice, and the dismissal was entered the same day.

Halo alleged "[n]o reasonable person in Scuderi's circumstance and no reasonable attorney in Sullivan's circumstance would have believed that there were reasonable grounds to file the complaint and litigate the case." Halo asserted Scuderi's 2019 contractual interference action "was filed in retaliation for Halo's successful small claims action." Halo alleged that on September 23, 2016 Scuderi, Gregory Crafts, and Jennifer Crafts[3] formed Stagecrafts; on March 6, 2019 Stagecrafts filed a certificate of cancellation to dissolve Stagecrafts; Scuderi could not sue Halo for intentional interference with Scuderi's agreement with Stagecrafts because Scuderi was one of the organizers of the company; Scuderi could not prove that Halo knew of the contract between Scuderi and Stagecrafts; and Halo's small claims judgment allowed her to protect her interests.

---

[3] We refer to Gregory Crafts and Jennifer Crafts by their first names to avoid confusion.

4

### 4. Scuderi's Special Motion To Strike

On June 17, 2021 Scuderi filed a special motion to strike Halo's 2021 complaint under section 425.16.[4] Scuderi argued that Halo's malicious prosecution claim was based on protected activity (Scuderi's filing of the 2019 contractual interference action), and Halo failed to establish a probability of prevailing on the merits. Scuderi acknowledged he dismissed his contractual interference action without prejudice. But he argued he had priority based on his $25,000 loan to Stagecrafts, and he was an organizer, not a member of Stagecrafts. Thus, he filed contractual interference action "in good faith and with probable cause." Further, Scuderi asserted, he acted without malice upon the advice of Sullivan.

In his supporting declaration, Scuderi stated that on December 27, 2016 he made a loan to Stagecrafts by transferring $25,000 from his personal bank account to the company. Scuderi was never a member, officer, or director of Stagecrafts, although his daughter Jennifer was a managing member. Scuderi sought legal advice from Sullivan, who advised him to memorialize his loan to Stagecrafts through a security agreement, which included a financing statement under the Uniform Commercial Code (UCC). Sullivan informed Scuderi that the security agreement would give him priority over all other potential creditors of Stagecrafts. Scuderi denied the UCC-1 financing statement was created for an improper purpose. He averred that his 2019 contractual interference action was based on the advice of Sullivan, and the action was filed to ensure his loan was given priority over Halo's judgment against Stagecrafts.

---

[4]     Sullivan also filed a special motion to strike Halo's complaint, which is not at issue in this appeal.

5

Sullivan stated in his declaration that Scuderi loaned money to Stagecrafts in 2016 to help Jennifer and Gregory in their business venture. The parties did not sign a written agreement. Shortly after Halo obtained the 2018 judgment in her small claims action against Stagecrafts, Scuderi hired Sullivan "to formalize the 2016 agreement." Sullivan declared, "Prior to preparing the security agreement and the UCC-1 statement I reviewed the California Code of Civil Procedure Sections 697.510 and 697.590 which I understood to mean that once filed, Scuderi had a perfected lien giving him priority over all other potential creditors of Stagecrafts to Stagecrafts personal property. [¶] . . . [¶] Since Halo had not filed a [judgment] lien[,] I concluded that Scuderi's lien would take priority over Halo's judgment and Halo could not attempt to enforce the judgment at least to the extent Halo sought execution of the judgment against Stagecrafts' personal property." Sullivan sent Halo notice of Scuderi's lien by email and mail on July 18, 2018. On October 18 Halo sought and obtained a writ of execution against Stagecrafts. On December 13 Halo obtained an order to take a judgment debtor examination of Stagecrafts, scheduled for February 25, 2019.

Sullivan further declared that after Stagecrafts received notice that Halo had levied on Stagecrafts's bank account, Scuderi filed a third-party claim against those funds. At a hearing on February 8, 2019, Sullivan argued that "Scuderi's UCC-1 filing prevented Halo from obtaining any personal property of Stagecrafts including funds in bank[] accounts" pursuant to section 697.590. However, as Sullivan acknowledged, the trial court denied Scuderi's third-party claim, and "Halo was given some proceeds of

6

Stagecrafts funds held in bank accounts."[5]  After "limited attempts to settle the case," Scuderi dismissed his 2019 contractual interference action against Halo without prejudice.  Sullivan declared, "I believed when I filed the case as I still do that Scuderi's case was legally sound with every factual allegation supported by evidence.  [¶]  . . . I never told Halo's counsel that Scuderi's case lacked merit, nor did any court ever express any opinion as to the merits of the case, good, bad, or indifferent."

Halo argued in her opposition that Scuderi and Sullivan filed the 2019 contractual interference action on February 4, 2019 to use the judicial system to intimidate her and prevent her from proceeding with her judgment debtor examination of Stagecrafts set for February 25.  Halo argued that she wanted to take the debtor examination to show that Gregory, Jennifer, and Scuderi were tenants under the theater lease, and therefore they were liable for the loss of Halo's painting.  However, once Scuderi filed his contractual interference action, Halo was "unable to continue with the small claims court case."  Further, Halo's conduct in filing the small claims action was privileged under Civil Code section 47; Scuderi's voluntary dismissal of his action against Halo was a favorable termination for purposes of Halo's malicious prosecution action; and Scuderi failed to meet the elements of an advice-of-counsel affirmative defense.

Halo averred in her supporting declaration that she is a professionally trained artist who sold many works of art, and she entrusted her oil painting, valued at $26,000, to the tenants of the

---

[5]  Although Sullivan declared the hearing occurred on February 9, 2019, we assume the correct date is February 8, 2019 because that is when the trial court denied Scuderi's third-party claim.

7

theater.  She later learned the tenants were Gregory, Jennifer, and Scuderi.  She filed the small claims action after the tenants lost her oil painting.

Halo submitted with her opposition multiple documents from the small claims action, including the court docket.  The docket reflected that Halo filed the small claims action on January 19, 2018.  After a bench trial, on March 16, 2018 the trial court entered judgment for Halo against Stagecrafts and Gregory for $7,500 plus $75 in costs.  The judgment was vacated on appeal, and after a new trial, on May 25, 2018 the court entered judgment for Halo against Stagecrafts for $5,000 plus $75 in costs.  Halo also submitted the third-party claim Scuderi filed on December 19, 2018 in which Scuderi declared that his loan agreement with Stagecrafts "was secured by a properly recorded UCC-1 filing," and it was a superior lien over the levied funds.  In its order determining claim of exemption for Scuderi's third-party claim, the court on February 8, 2019 denied Scuderi's claim after hearing testimony from Scuderi and Sullivan.  In the signed order, the court found "judgment creditor, Adi Halo, has superior claim of interest over Third Party Claimant, Salvatore Scuderi."  The order added, "The levying officer is directed to release any funds held to the judgment creditor Adi Halo for payment on the judgment."  However, a February 25, 2019 memorandum of garnishee from Stagecrafts's bank showed that Stagecrafts's bank account had no remaining funds after a check for $17.78 was sent from the account in December 2018.

In his reply brief, Scuderi argued the litigation privilege was not at issue on the motion to strike, and Halo had failed to address Scuderi's arguments that he had probable cause to file the 2019 contractual interference action and did not have malice because he relied on the advice of counsel.

8

On March 17, 2023 the trial court heard argument from counsel and took the matter under submission.  The court later continued the hearing and allowed Scuderi to submit a supplemental declaration addressing his affirmative defense based on advice of counsel.

In his supplemental declaration, Scuderi stated he disclosed to Sullivan in their first meeting that Scuderi helped to incorporate Stagecrafts, but he was never a member, officer, or director.  Scuderi also told Sullivan there was a May 25, 2018 judgment of $5,000 against Stagecrafts.  Scuderi declared, "I was advised by Mr. Sullivan that an incorporator is not necessarily a member of an LLC unless he/she is listed as one in the corporate filings.  I was also advised that if no abstract of judgment was filed by Adi Halo, my lien would have priority over Adi Halo's.  I reasonably relied on these pieces of advice."  Scuderi added, "I never had any malice toward Adi Halo.  I was attempting to collect a legitimate debt from Stagecrafts based upon my attorney John Sullivan's advice.  I also dismissed my intentional interference with contract action based upon Mr. Sullivan's advice."

B.    *The Trial Court's Ruling*

On May 19, 2023 the trial court denied Scuderi's special motion to strike.  The court ruled Scuderi's filing of his 2019 contractual interference action against Halo was protected activity under section 425.16 because it was in furtherance of his right of petition.  Therefore, he met his burden to satisfy the first step of the anti-SLAPP process.

Turning to the second step, the trial court concluded Halo met her burden to show a probability of prevailing on her malicious prosecution claim.  The court found Scuderi's voluntary dismissal of his 2019 contractual interference action was a termination

9

favorable to Halo for purposes of a malicious prosecution claim.  In addition, Halo demonstrated that Scuderi lacked probable cause to sue Halo for contractual interference.  The court reasoned that Scuderi's claim was legally untenable because Halo's pursuit of a small claims judgment was absolutely privileged under Civil Code section 47, and there was no evidence of bad faith to negate the litigation privilege.  Finally, the court found Halo "produced evidence indicative of malicious intent."  The court credited Halo's argument that Scuderi's filing of his contractual interference action on February 4, 2019 was intended to prevent Halo from conducting the judgment debtor examination on February 25.  Moreover, the memorandum of garnishee dated February 25 showed Stagecrafts had no funds remaining in its bank account, and therefore, Scuderi knew he could not recover on his loan from Stagecrafts's account.  Accordingly, Scuderi had malicious intent in filing the 2019 action because he "could not have legitimately been seeking to enforce the UCC lien."

The trial court rejected Scuderi's affirmative defense that he relied on the advice of his attorney in bringing his 2019 contractual interference action.  The court observed there was conflicting evidence on whether Scuderi made a full and honest disclosure to Sullivan about all the facts of the case, and accordingly, the advice-of-counsel affirmative defense was a determination of fact that "should be sorted out in trial."

Scuderi timely appealed.

**DISCUSSION**

A.    *Special Motions To Strike Under Section 425.16*

A cause of action arising from an act in furtherance of a defendant's constitutional right of petition or free speech in connection with a public issue is subject to a special motion to strike unless the plaintiff demonstrates a probability of prevailing on the claim.  (§ 25.16, subd. (b)(1); see *Serova v. Sony Music Entertainment* (2022) 13 Cal.5th 859, 871; *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009; *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 (*Monster Energy*).)  An "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue'" includes, among other things, "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" or "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1) & (2).)

"Litigation of an anti-SLAPP motion involves a two-step process.  First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.'  [Citation.]  Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."'  [Citation.]  If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System, supra*, 11 Cal.5th at p. 1009; accord, *Monster Energy, supra*, 7 Cal.5th at p. 788.)

11

A cause of action for malicious prosecution arises from protected activity, thereby satisfying the first step of the anti-SLAPP analysis. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734-735 [section 425.16 applies to malicious prosecution claims because by definition the claim "alleges that the defendant committed a tort by filing a lawsuit"]; *Jenkins v. Brandt-Hawley* (2022) 86 Cal.App.5th 1357, 1375 (*Jenkins*) [""The plain language of the anti-SLAPP statute dictates that every claim of malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding[.]""]; see *Escamilla v. Vannucci* (2025) 17 Cal.5th 571, 577.) Thus, the only issue is whether Halo met her burden of establishing a probability of prevailing on her malicious prosecution claim. (*Escamilla*, at p. 577; *Jenkins*, at p. 1375.)

As to the second step of the anti-SLAPP analysis, the Supreme Court in *Monster Energy, supra*, 7 Cal.5th at page 788 explained, "'We have described this second step as a "summary-judgment-like procedure." [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] "[C]laims with the requisite minimal merit may proceed."'" (Accord, *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385; *Jenkins, supra*, 86 Cal.App.5th at p. 1375.) "[A] plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.'"

12

(*Monster Energy*, at p. 788; accord, *Sweetwater Union High School Dist. v. Gillbane Building Co.* (2019) 6 Cal. 5th 931, 941 [section 425.16, subd. (b)(2) "provides that '[i]n making its determination, the court shall consider the pleadings, and supporting and opposing *affidavits* stating the facts upon which the liability or defense is based'"].)

We review the grant or denial of an anti-SLAPP motion de novo. (*Monster Energy, supra*, 7 Cal.5th at p. 788 [applying de novo review for second step of anti-SLAPP analysis]; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 [same].) "In performing our de novo review, we ' "conduct[] an independent review of the entire record. [Citations.]" ' [Citation.] '[O]ur review is conducted in the same manner as the trial court in considering an anti-SLAPP motion.' [Citation.] We review the trial court's decision, not its rationale." (*Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 202 [reviewing de novo whether plaintiff met burden of establishing probability of prevailing on malicious prosecution claim].)

B.    *Malicious Prosecution Claims*

"Malicious prosecution is an intentional tort. It offers a remedy to one subjected to a criminal charge or civil action that has been maliciously instituted or maintained. [Citation.] To prevail, the plaintiff must show that a prior action was: commenced by or at the direction of the defendant; initiated or maintained both without probable cause and with malice; and pursued to a legal termination favorable to the plaintiff." (*Escamilla v. Vannucci, supra*, 17 Cal.5th at p. 577; accord, *Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775.)

"'[T]he probable cause element calls on the trial court to make an objective determination of the "reasonableness" of the

defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable,' as opposed to whether the litigant subjectively believed the claim was tenable. [Citation.] A claim is unsupported by probable cause only if ""any reasonable attorney would agree [that it is] totally and completely without merit."" (*Parrish v. Latham & Watkins, supra*, 3 Cal.5th at p. 776; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292 (*Soukup*) ["A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him."'].)

"'The "malice" element . . . relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action. [Citation.] The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose. [Citation.] The plaintiff must plead and prove actual ill will or some *improper* ulterior motive.'" (*Soukup, supra*, 39 Cal.4th at p. 292; accord, *Jenkins, supra*, 86 Cal.App.5th at pp. 1383-1384 ["[S]uits brought with improper purposes include: "'[t]hose in which (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; [or] (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.""'].) "Malice 'may range anywhere from open hostility to indifference.'" (*Soukup*, at p. 292.)

"To determine whether a party has received a favorable termination, we consider "'the judgment as a whole in the prior action. . . ." [Citation.]' [Citation.] Victory following a trial on the merits is not required. Rather, "'the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit.'"" (*Siebel v. Mittlesteadt* (2007) 41 Cal.4th 735, 741; accord, *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341-342.) "A voluntary dismissal of the prior suit by the plaintiff—not resulting from a settlement—will, in general, constitute a favorable termination. [Citation.] '[A] voluntary dismissal, even one without prejudice, may be a favorable termination which will support an action for malicious prosecution. [Citation.] "In most cases, a voluntary unilateral dismissal is considered a termination in favor of the defendant in the underlying action."'" (*Maleti v. Wickers, supra*, 82 Cal.App.5th at p. 205.)

C.    *Halo Met Her Burden of Establishing a Probability of Prevailing on Her Malicious Prosecution Claim*

Scuderi does not dispute that his voluntary dismissal of the 2019 action without prejudice constitutes a legal termination favorable to Halo for purposes of her malicious prosecution claim. (*Roche v. Hyde* (2020) 51 Cal.App.5th 757, 789 (*Roche*) [voluntary dismissal of tort causes of action without prejudice where plaintiff was facing terminating sanctions was favorable termination]; *Olivares v. Pineda* (2019) 40 Cal.App.5th 343, 354 [voluntary dismissal of unlawful detainer action without consideration in light of evidence landlords were charging excessive rent was favorable termination for tenants].) Scuderi instead contends he had probable cause to bring his 2019 action for contractual interference

15

and the trial court erred in relying on the litigation privilege under Civil Code section 47 to find he did not. The trial court did not err.

As a threshold matter, Scuderi did not have a legal basis for filing his 2019 contractual interference action. It is undisputed that Halo obtained a small claims judgment against Stagecrafts on May 25, 2018. As a judgment creditor, Halo was entitled to enforce the judgment against Stagecrafts's assets by "(1) obtain[ing] a *writ of execution* from the trial court, which is directed to the sheriff or other levying officer and authorizes them to enforce the judgment (§§ 669.510, subd. (a); 699.520), and (2) complet[ing] and serv[ing] a *notice of levy*, which is directed to the judgment debtor or third person holding the debtor's property and notifies them of their duties and rights (§ 699.540)." (*Bergstrom v. Zions Bancorporation, N.A.* (2022) 78 Cal.App.5th 387, 397-398.)

Scuderi's 2019 contractual interference action was premised on Scuderi, as a secured creditor, having priority over Halo, as an unsecured judgment creditor. But under Commercial Code section 9332, subdivision (b), "[a] transferee of funds from a deposit account takes the funds free of a security interest in the deposit account if the transferee receives the funds without acting in collusion with the debtor in violating the rights of the secured party."[6] Because there is no evidence Halo acted in collusion with Stagecrafts, Halo was entitled to satisfy her small claims judgment from funds in Stagecrafts's bank account free of Scuderi's security interest. (See *Orix Financial Services, Inc. v. Kovacs* (2008) 167 Cal.App.4th 242, 245, 249-250 [under Com. Code, § 9332,

---

[6] Commercial Code section 9102, subdivision (a)(29), defines "'[d]eposit [a]ccount'" as "a demand, time, savings, passbook, or similar account maintained with a bank."

16

subd. (b), unsecured judgment creditor may satisfy judgment from deposit account free of any security interest].)[7]

In addition, Halo's enforcement of her small claims judgment by seeking and obtaining a writ of execution and levy on Stagecrafts's bank account was privileged under Civil Code section 47. As the Supreme Court explained in *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055, 1057, in concluding the litigation privilege applied to an attorney's postjudgment enforcement efforts, including levying on the debtor's property, "'[The litigation privilege] applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. [Citations.] [¶] The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" (Accord, *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955.) "[T]he key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." (*Rusheen*, at p. 1058.) "The '[p]leadings and

---

[7] We requested the parties submit supplemental letter briefs on the effect of Commercial Code section 9332, subdivision (b), on whether Scuderi's secured interest had priority over Halo's judgment. In his supplemental letter brief Scuderi urged us not to follow *Orix Financial Services, Inc. v. Kovacs, supra*, 167 Cal.App.4th at page 245, and argued that regardless of the impact of this section on the priority of his lien, the issue does not affect his advice-of-counsel defense.

process in a case are generally viewed as privileged communications.'" (*Ibid.*)

Accordingly, Halo's acts in obtaining a writ of execution in the trial court and levying on Stagecrafts's bank account, as postjudgment enforcement efforts, are privileged. (*Rusheen, supra,* 37 Cal.4th at p. 1062 [where the basis of the "complaint is a privileged communication (i.e., allegedly perjured declarations of service) the privilege extends to necessarily related noncommunicative acts (i.e., act of levying)"]; *Tom Jones Enterprises, Ltd. v. County of Los Angeles* (2013) 212 Cal.App.4th 1283, 1296 ["enforcement efforts in connection with a writ of execution (levying on a bank account and filing an abstract of judgment) are privileged"].) Because Halo's enforcement of her small claims judgment falls within the ambit of the litigation privilege, Scuderi lacked probable cause to bring his 2019 action against Halo for contractual interference.

Finally, Halo satisfied the malice element of her malicious prosecution claim based on Scuderi's filing and continued litigation of the 2019 contractual interference action without probable cause. (See *Soukup, supra,* 39 Cal.4th at p. 292 ["'Malice may . . . be inferred from the facts establishing lack of probable cause.'"]; *Roche, supra,* 51 Cal.App.5th at pp. 826-827 ["The fact that the defendants filed and maintained an action that lacked probable cause, on this record, raises an inference of malice," but is not alone sufficient to establish prima facie case of malice].) Regardless of whether Scuderi had knowledge that there was no legal basis for his contractual interference action when he filed it on February 4, 2019, he continued to prosecute the action after the trial court held on February 8 with respect to his third-party claim that "judgment creditor, Adi Halo, has superior claim of interest over Third Party

18

Claimant, Salvatore Scuderi." (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 727 ["'[M]alice can be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause.'"].) Despite the court's ruling, Scuderi did not dismiss the action until March 20, 2021.

Moreover, Scuderi should have been on notice as of February 25, 2019 that Stagecrafts had minimal or no funds in its bank account based on the bank's memorandum of garnishee. In addition, as the trial court observed, it was also relevant to Scuderi's motive in bringing the action that Scuderi filed his complaint a few weeks before Halo's scheduled debtor examination of Stagecrafts (set for February 25, 2019).

D. *Scuderi Failed To Meet His Burden To Show His Affirmative Defense Defeated Halo's Malicious Prosecution Cause of Action*

Scuderi contends he made a prima facie showing of good faith reliance on counsel's advice as an affirmative defense to Halo's malicious prosecution claim. Scuderi points to his initial declaration as evidence he relied on Sullivan's advice in bringing the 2019 contractual interference action, including Sullivan's advice to memorialize Scuderi's loan to Stagecrafts in a security agreement with a UCC-1 financing statement, and Sullivan's opinion that the UCC-1 financing statement would give Scuderi priority over all other potential creditors of Stagecrafts, including Halo.

"'Good faith reliance on the advice of counsel, after truthful disclosure of all the relevant facts, is a complete defense to a malicious prosecution claim.'" (*Nunez v. Pennisi* (2015) 241 Cal.App.4th 861, 876; accord, *Bisno v. Douglas Emmett Realty Fund 1988* (2009) 174 Cal.App.4th 1534, 1544; see *Bertero v.*

19

*National General Corp.* (1974) 13 Cal.3d 43, 53.) "'"Probable cause may be established by the defendants in a malicious institution proceeding when they prove that they have in good faith consulted a lawyer, have stated all the facts to him, have been advised by the lawyer that they have a good cause of action and have honestly acted upon the advice of the lawyer."'" (*Roche, supra*, 51 Cal.App.5th at pp. 827-828; accord, *Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 496, fn. 24 ["nonattorney defendants can usually demonstrate the existence of probable cause, and thus avoid liability, by evidence showing that they relied on the advice of counsel in good faith after full disclosure of the facts"].)

Scuderi had the burden of proving his affirmative defense of reliance on advice of counsel. (*Bertero v. National General Corp., supra*, 13 Cal.3d at p. 54 ["The burden of proving this affirmative defense is, of course, on the party seeking to benefit by it."]; *Nunez v. Pennisi, supra*, 241 Cal.App.4th at p. 877.) "Where the defendant raises an affirmative defense in its anti-SLAPP motion, 'the court, following the summary-judgment-like rubric, generally should consider whether the defendant's evidence in support of an affirmative defense is sufficient, and if so, whether the plaintiff has introduced contrary evidence, which, if accepted, would negate the defense.'" (*Long Beach Unified School Dist. v. Margaret Williams, LLC* (2019) 43 Cal.App.5th 87, 100; accord, *Bentley Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 434.) This summary-judgment-like procedure applies to Scuderi's advice-of-counsel affirmative defense in the context of his special motion to strike. (See *Roche, supra*, 51 Cal.App.5th at p. 827.)

Scuderi's statements in his declaration explaining that he filed his complaint against Halo in good faith based on Sullivan's advice was sufficient to meet Scuderi's initial burden. But Halo

20

presented contrary evidence that negated Scuderi's advice-of-counsel defense, specifically, the same evidence that showed Scuderi acted with malice in filing the action. After Halo obtained the December 13, 2018 order requiring Stagecrafts to produce a statement of assets and to appear for a debtor examination on February 25, 2019, Scuderi filed his 2019 contractual interference action, just three weeks before the scheduled examination. Halo maintained that Scuderi's commencement of the action was to prevent her from conducting the debtor examination. In addition, the February 25 memorandum of garnishee showed Stagecrafts's bank account had no remaining funds. As Halo argued, this evidence supported a finding that Scuderi had no legitimate reason to sue Halo in order to enforce the UCC lien against the bank account. Further, as discussed, on February 8, 2019 the trial court rejected Scuderi's argument that Halo could not enforce her judgment because he obtained a UCC lien that was superior to her rights as an unsecured judgment creditor, yet Scuderi did not dismiss his contractual interference action for two years—in March 2021.

The trial court properly accepted Halo's evidence as true, and Scuderi's evidence did not defeat Halo's claim "'as a matter of law'"; accordingly, Scuderi's advice-of-counsel defense does not negate Halo's prima facie showing of probability of prevailing on her malicious prosecution action for purposes of the second step of the anti-SLAPP analysis. (*Monster Energy, supra*, 7 Cal.5th at p. 788.)

21

## DISPOSITION

The order denying Scuderi's special motion to strike under section 425.16 is affirmed.  Halo shall recover her costs on appeal from Scuderi.

FEUER, J.

We concur:


SEGAL, Acting P. J.


STONE, J.